**RECEIVED**

JAN 1 9 2023

**U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **ERIC GARLAND** | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | **4:23CV0064** |
| | ) | |
| v. | ) | |
| | ) | **42 U.S.C. §§ 1983,** |
| | ) | **1985, 1988** |
| | ) | |
| **HON. MARY B. SCHROEDER** | ) | |
| in her individual capacity, | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| **HON. JOHN R. LASATER** | ) | |
| In his individual capacity | ) | |
| | ) | |
| **DAVID S. BETZ, ESQ.** in his individual capacity, | ) | |
| | ) | |
| **DR. DEAN L. ROSEN,**  in his individual capacity, | ) | |
| | ) | |
| **DR. ANTHONY J. CASTRO,** in his individual capacity, | ) | |
| | ) | |
| **ANTHONY J. STEMMLER,** in his individual capacity, | ) | |
| | ) | |
| **JOAN M. GILMER,** in her individual capacity | ) | |
| | ) | |
| **DOES 1-10** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**VERIFIED PETITION PURSUANT TO 42 U.S. CODE §§ 1983, 1985, 1988**

COMES NOW Plaintiff Eric Garland (hereinafter "Plaintiff"), *pro se*, and for his Verified

Petition Pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 states the following:

**NATURE OF THE CASE**

1.      This is a complaint for injunctive relief against two (2) judges, and declaratory

relief for damages against one (1) attorney, two (2) psychologists, one (1) juvenile officer, and

the Clerk of the Court of St. Louis County, Missouri for violations of Plaintiff's First, Fifth, and

Fourteenth Amendment rights, cognizable under 42 U.S. Code §§ 1983, 1985, and 1988. These

individual Defendants, officers and employees, acting in their employment by St. Louis County

and the Kirkwood Police Department under color of state law, violated Plaintiff's First

Amendment rights to freedom of speech and freedom of religion, Fifth Amendment right to due

process, and his Fourteenth Amendment right to equal protection under the law and to parent his

children. The nexus of these Constitutional violations is a tight-knit, self-dealing network of for-

profit attorneys, elected judges, and psychologists who act systematically under color of

Missouri state law, abetted by employees of St. Louis County. The defendants engaged in

systematic violations of Plaintiff's Constitutional rights over three years under the guise of the

litigation of a Motion to Modify the court-ordered Parenting Plan in the best interest of the

Plaintiff's two minor children. Defendants' real aim was to make personal financial profits, to

strip Plaintiff of his parental rights in retaliation for his public speech about national security and

public corruption; to relegate him to the status of a second-class citizen due to his religious

beliefs or lack thereof; and to punish him for his legal inquiry into the warrantless search of his

home by individuals presumed to be officers of the Kirkwood Police Department. Defendants

repeatedly violated Plaintiff's rights guaranteed under the United States Constitution,

intentionally and wantonly inflicted emotional distress, defamed Plaintiff as mentally ill, and

caused irreparable harm to Plaintiff's health, financial welfare, and future career prospects.

## PARTIES

2.     Plaintiff Eric A. Garland is and was, at all times relevant hereto, a citizen of the

United States and resident of Kirkwood, Missouri.

3.     Defendant Hon. Mary B. Schroeder is and/or was, at all times relevant hereto, a

citizen of the United States and acting under color of state law as an Associate Circuit Judge in

the employment of St. Louis County. She is a resident of Des Peres, Missouri. At all times

mentioned herein, she acted both on her own and in concert with the other defendants, under

color of state law. As a party to this action, Defendant Schroeder is named in her individual

capacity.

4.     Defendant Hon. John R. Lasater is and/or was, at all times relevant hereto, a

citizen of the United States and acting under color of state law as an Associate Circuit Judge in

the employment of St. Louis County. He is a resident of Kirkwood, Missouri. At all times

mentioned herein, he acted both on his own and in concert with the other defendants, under color

of state law. As a party to this action, Defendant Lasater is named in his individual capacity.

5.     Defendant David S. Betz, Esq. is and/or was, at all times relevant hereto, a citizen

of the United States and acting under color of state law as a Guardian *ad litem* in the employment

of St. Louis County. He is a resident of Webster Groves, Missouri. At all times mentioned herein,

he acted both on his own and in concert with the other defendants, under color of state law. As a

party to this action, Defendant Betz is named in his individual capacity.

      6.     Defendant Dean L. Rosen PsyD is and/or was, at all times relevant hereto, a

citizen of the United States and acting under color of state law as a court psychologist in the

employment of St. Louis County. He is a resident of St. Louis County, Missouri. At all times

mentioned herein, he acted both on his own and in concert with the other defendants, under color

of state law. As a party to this action, Defendant Rosen is named in his individual capacity.

      7.     Defendant Anthony J. Castro, PsyD is and/or was, at all times relevant hereto, a

citizen of the United States and acting under color of state law as a court psychologist in the

employment of St. Louis County. He is a resident of Webster Groves, Missouri. At all times

mentioned herein, he acted both on his own and in concert with the other defendants, under color

of state law. As a party to this action, Defendant Castro is named in his individual capacity.

      8.     Defendant Anthony J. Stemmler is and/or was, at all times relevant hereto, a

citizen of the United States and acting under color of state law as a lawfully empowered juvenile

officer in the employment of the Kirkwood, Missouri Police Department. He is a resident of St.

Louis City, Missouri. At all times mentioned herein, he acted both on his own and in concert with

the other defendants, under color of state law. As a party to this action, Defendant Stemmler is

named in his individual capacity.

      9.     Defendant Susan Gilmer is and/or was, at all times relevant hereto, a citizen of the

United States and acting under color of state law as Clerk of the Court in the employment of St.

Louis County. She is a resident of Overland, Missouri. At all times mentioned herein, she acted

both on her own and in concert with the other defendants, under color of state law. As a party to

this action, Defendant Gilmer is named in her individual capacity.

## JURISDICTIONAL STATEMENT

10.     This Petition is filed pursuant to 42 U.S. Code §§ 1983, 1985, and 1988. This

Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1331. Venue is proper in the

Eastern District of Missouri pursuant to 28 U.S. Code § 1391(b.)

## FACTUAL ALLEGATIONS

*I. Initial Dissolution of Marriage and Establishment of a Court-Ordered Parenting Plan*

11.     Plaintiff Eric Garland was married in St. Louis City, Missouri on April 1, 2006 to

Katherine (née Puetz) Garland M.D.. Both were residents of Silver Spring, Maryland and worked

in Washington, District of Columbia at that time. Plaintiff operated a management consultancy

that provided strategic intelligence services to corporations and government agencies. Dr.

Garland (hereinafter "Mother") was a resident in internal medicine at George Washington

University Hospital. In 2009, minor child W.G. was born in Silver Spring, Maryland. In 2010,

Plaintiff and Mother relocated to St. Louis City, Missouri. In 2011, the family relocated to Des

Peres, Missouri in St. Louis County. In 2012, minor child A.G. was born.

12.     Plaintiff filed his petition for dissolution of marriage, *Garland v. Garland*, case

number 15SL-DR06612, in St. Louis County Court on November 20, 2015. On that same day,

Plaintiff established his residence in Kirkwood, Missouri. The case was assigned to the Hon.

Mary B. Schroeder (hereinafter "Schroeder") in Division 32 of St. Louis County Court.

14.    The Court of St. Louis County had jurisdiction at all times herein pursuant to *Mo. Rev. Stat.* § 452.700 *et seq*., the Uniform Child Custody Jurisdiction and Enforcement Act.

15.    On or about July 24, 2016, Plaintiff was deemed a fit parent by Schroeder, who granted Plaintiff, with Mother's consent, joint legal and joint physical custody of the two minor children produced by the marriage. Schroeder ordered a Parenting Plan that split custodial time close to evenly between both parents.

16.    On or about December 15, 2016, Mother, and Plaintiff signed a consent order by Schroeder sealing the case *Garland v. Garland* due to Plaintiff's status as a public figure as a thought leader in the field of intelligence and national security and specifically due to potential threats due to Plaintiff's then-recent public revelations about Russian espionage operations against the United States. Schroeder and Mother stipulated to certain facts in support of sealing the case, to wit, that [Plaintiff] is a public figure, commenting frequently on matters of public importance, appearing on talk shows and radio shows; that [Plaintiff] recently went viral on the internet over his political commentary on Russian interference in the election; that as a result of his commentary on the Russian interference in the election, individuals have made various threatening comments against [Plaintiff,] [Mother's] home, etc.; that [Plaintiff] is concerned for his minor children and the mother of his minor children; and that [Mother] consents to this Motion to Elevate the Security Setting on Casenet.

18.    On or about February 3, 2018, unidentified individuals presumed to be in the employ the Kirkwood Police Department (hereinafter "Kirkwood PD") conducted a warrantless search of Plaintiff's home in Kirkwood. Armed individuals demanded, without probable cause

nor a warrant, to search the bedrooms of Plaintiff's two minor children while they slept in their

beds. The presumed officers did not identify themselves. The presumed officers did not wear

Axon body cameras to record the search. The presumed officers did not wear name tags. The

presumed officers did not show Plaintiff identification. Plaintiff made a Sunshine Law request

pursuant to *Mo. Rev. Stat.* § 610.110 *et seq*. about the search of his home. Kirkwood PD declined

to respond to said request, and later apparently refused to disclose any records of said Sunshine

Law request even in response to the eventual subpoena from the Schroeder Court in July of

2019.

## II. Plaintiff's Verified Motion for Contempt - 15SL-DR06612

19.     On May 14, 2019, Plaintiff, acting *pro se*, successfully filed his Verified Motion

for Contempt and his Motion to Show Cause for Contempt in the case of *Garland v Garland*. On

that day, Plaintiff paid $36.00 to St. Louis County for process to be served on Mother by the St.

Louis County Sheriff's Department. A hearing was scheduled by employees under the

supervision of Clerk of the Court Joan Gilmer (hereinafter "Gilmer".) However, process was

never served upon Mother. Schroeder did not sign the Motion to Show Cause for Contempt in a

timely manner. Plaintiff was subsequently instructed by employees under the supervision of

Gilmer to refile the same documents, which he did. However, these were altered without

permission by employees under the supervision of Gilmer who falsely scribbled "AMENDED"

to read "AMENDED VERIFIED MOTION FOR CONTEMPT," even though the pleading was

not amended and Plaintiff did not write those words. A hearing on Plaintiff's Motion to Show

Cause for Contempt was scheduled for June 24, 2019.

*III. Mother's Motion to Modify and Application for* ex parte *Temporary Restraining Order and Preliminary Injunction - 15SL-DR06612-01*

20.     At all times herein, the states of Missouri and Virginia had both adopted the Uniform Child Custody Jurisdiction and Enforcement Act as laws in their respective states.

21.     On or about June 3, 2019, Mother expressed in writing her intention to travel with the children during one of Plaintiff's court-ordered custodial periods, without his consent. Further, Mother expressed her intention to cross an international border with the minor children without a signed affidavit of consent signed by Plaintiff.

22.     On or about June 5, 2019, Plaintiff provided a sworn affidavit to the Federal Bureau of Investigation, attesting to the facts of the situation as a precautionary measure in the event that Mother absconded with the children across an international border during his custodial time without his consent.

23.     On or about June 10, 2019, during Plaintiff's court-ordered custodial time, Mother absconded with both minor children across the country to the state of Virginia without Plaintiff's consent.

24.     Plaintiff was legally entitled to a warrant for the return of the minor children pursuant to *Mo. Rev. Stat.* §§ 452.885 and 452.870 because Mother failed to return the children to Plaintiff's custody according to the court-ordered Parenting Plan.

25.     On or about June 10, 2019 at approximately 3:40 p.m., Plaintiff reported the incident to the St. Louis County Police, who directed Plaintiff to meet with the Valley Park,

Missouri Police, who in turn directed Plaintiff to bring the Schroeder Court's Parenting Plan to Kirkwood PD.

26.     Plaintiff proceeded to Kirkwood PD on June 10, 2019 at approximately 5:00 p.m. where he was interviewed for approximately 45 minutes by two officers. The officers interviewed plaintiff wearing Axon body cameras, which they informed Plaintiff were in operation during the interview. After meeting with Plaintiff, Kirkwood PD began an investigation and referred the case to Defendant Anthony Stemmler (hereinafter "Stemmler,") a juvenile officer employed by the City of Kirkwood. The officers told Plaintiff to return to Kirkwood PD on June 11, 2019 at 8:30am.

27.     On June 11, 2019 at approximately 7:30am, Plaintiff contacted the York County, Virginia Sheriff's Department. Plaintiff made contact with Sheriff's Deputy [first name unknown] Clark, who also began an investigation.

28.     On June 11, 2019 at approximately 8:30am, Plaintiff returned to Kirkwood PD. Stemmler sat down with Plaintiff in a closed conference room. Stemmler did not wear an Axon body camera. In contradiction to the police officers who started the investigation, Stemmler told Plaintiff that there was no case. Stemmler made clear that because there was no case, he would not be doing additional investigation. Stemmler refused to communicate with Plaintiff further. Defendant Stemmler also refused to work with York County Sheriff's Department on their investigation, despite communications from their deputies and from Plaintiff.

29.     On June 11, 2019 at approximately 2:30 p.m., Plaintiff received a call from Deputy Clark of the York County, Virginia Sheriff's Department. Deputy Clark told Plaintiff that

he was continuing the investigation, and that only Kirkwood PD could deliver to his Sheriff's Department the court documents that would serve as corroborating evidence to take further steps.

30.     On June 11, 2019 at 3:50 p.m. Plaintiff wrote Stemmler an email with a digital copy of the requested court documents with a request to forward said documents to the York County, Virginia Sheriff's Department. Stemmler did not respond.

31.     On or about June 11, 2019, Mother filed a Motion to Modify custody in St. Louis County Court, Cause Number 15SL-DR06612-01. The documents were notarized on June 10, 2019 by Kara Skillington of St. Charles County, Missouri. However, Mother was in Virginia on that date.

32.     On June 12, 2019, Plaintiff spoke again with Deputy Clark of the York County, Virginia Sheriff's Department, who renewed his request for official court documents from Kirkwood PD and requested that Plaintiff make further attempts to obtain these. Plaintiff wrote both Stemmler and the Mayor of Kirkwood asking them to take the actions requested by the York County, Virginia Sheriff's Department. Plaintiff received no response from either Stemmler nor the Mayor of Kirkwood.

33.     On June 12, 2019, Mother filed an Application for Temporary Restraining Order and/or for Preliminary Injunction pursuant *Mo. R. Civ. P.* § 92.02(b), which provides for emergency, *ex parte* orders of protection pursuant to *Mo. Rev. Stat.* § 455.050. Despite being 750 miles away, Mother sought emergency protection from Plaintiff. Mother also sought emergency protection from any law enforcement officers looking into her case and that the Court enjoin Plaintiff from communicating with any law enforcement agencies. Mother's Application

included details that would only have been known to the two Kirkwood PD officers and Plaintiff, despite Stemmler's claim that there was no case, no further investigation, and no records about same to disclose. Moreover, Mother's Application includes details in her sworn averments not disclosed in the documents sent on July 30, 2019 in response to Mother's subpoena *duces tecum* propounded on Kirkwood PD more than a month after said Application.

34.     Mother's signature is affixed to her Application, dated June 12, 2019. The documents were notarized on June 12, 2019 by Kara Skillington of St. Charles County, Missouri, who claimed to have witnessed Mother's signature. However, Mother was in Virginia on that date.

35.     On June 12, 2019, Schroeder scheduled a hearing on Mother's *ex parte* Temporary Restraining Order for June 14, 2019 at 10:30 a.m. in Division 32 of St. Louis County Court.

36.     Mother's Application for an order of protection averred that that noticing Plaintiff of the hearing would not be in the best interest of the children. Nevertheless, Mother caused private process to be served upon Plaintiff with notice of the *ex parte* hearing. On June 13, 2019 at 10:36 a.m., Plaintiff was served by St. Louis Investigations and Process Service with a summons for the June 14, 2019 *ex parte* Temporary Restraining Order hearing, fewer than the twenty-four hours of advance notice required by Missouri state law.

37.     On June 14, 2019 at 10:30 a.m., Plaintiff appeared *pro se* in Division 32 of St. Louis County Court. Mother did not appear at the hearing. Schroeder refused to call the court to order. Schroeder refused to convene a hearing. No verbatim record was made. No evidence was

adduced. No witnesses were allowed to testify. Plaintiff was alone, without legal counsel, in a

locked courtroom with only Schroeder, a bailiff, and Mother's counsel, Catherine W. Keefe, Esq.

(hereinafter "Keefe"). Keefe prepared court orders which forbade Plaintiff from seeing or

contacting his children for 42 days and which appointed David S. Betz, Esq. (hereinafter "Betz")

as Guardian *ad litem* and which ordered Plaintiff to pay Betz $1000.00. Plaintiff was threatened

by Schroeder and Keefe to falsely indicate his consent to give up his parental rights as a party to

Mother's Motion to Modify litigation. Schroeder threatened to immediately jail Plaintiff for an

unspecified crime if he refused to sign the orders prepared by Keefe. Plaintiff signed the

documents out of fear of immediate loss of his liberty for an indefinite period of time, and out of

fear of the lethal violence he might experience in St. Louis County's notorious jail, where in that

same year five detainees died under suspicious circumstances which have resulted in multiple

civil rights lawsuits. But for the immediate threat to his physical safety, Plaintiff would have

refused to give up his parental rights without due process.

   38.  Schroeder, Keefe, and Betz falsely captioned these orders as "Settlement

Conference Orders" despite no settlement conference having been possible according to St.

Louis County Local Court Rule 68.6, which governs status conferences. To wit, a settlement

conference was never scheduled, no issues were discussed prior to a conference, documents were

not exchanged nor was there a stipulation as to their authenticity, and Mother was not present for

a first conference. Several of these actions are, according to Local Court Rules, to be taken seven

days prior to a status conference; Mother had only filed her Motion two days before.

Nevertheless, Schroeder, Keefe, and Betz affixed their signatures and swore that the coercion of

Plaintiff's signature was a "Settlement Conference," Gilmer subsequently recorded the event as a

"Settlement Conference," and recorded the orders as "Settlement Conference Orders."

39.     Plaintiff paid Betz $1000.00 via credit card on June 14, 2019 pursuant to Betz's

electronic requests for funds via email.

40.     On July 3, 2019 at approximately 1:00 p.m., Plaintiff met with Betz in his Webster

Groves law offices. Plaintiff's then-attorney Bradford C. Emert, Esq. was not present. Betz

interrogated Plaintiff about Plaintiff's access to classified intelligence from the United States

Government. Betz inquired as to Plaintiff's knowledge of the current counterintelligence posture

of the United States Intelligence Community with regards to Russian espionage operations. Betz

inquired as to the nature of Plaintiff's activities on behalf of the United States Government. Betz

also interrogated Plaintiff about his Sunshine Law request of documents from the Kirkwood

Police Department about the warrantless search of Plaintiff's home on February 3, 2018 despite

that event never having been mentioned in any pleadings of the child custody case before the

court. Betz asked minimal questions about the well-being of the minor children as per the

jurisdiction of his appointment by the Court. Following this interrogation, Betz did not request

medical records of the children; did not request medical records of Mother; did not request

medical records of Plaintiff; did not request school records of the children; did not request

additional information from Plaintiff.

41.     On July 15, 2019, attorneys for the parties and the Guardian *ad litem* met *in*

*camera* in Division 32. Without calling the court to order, Schroeder ordered a drastically

reduced custodial schedule for Plaintiff. Schroeder appointed Anthony Castro, PsyD. (hereinafter

"Castro") as the Court's psychologist for the children. Without good cause shown, Schroeder, while in chambers and off the record, ordered that Plaintiff receive a psychological evaluation. Schroeder ordered that Betz have the power to change any part of the temporary custody order at any time, impermissibly delegating her judicial powers. Plaintiff, who had already not been allowed contact with his children for 42 days, was told he would not be allowed to see them again until he signed these orders **without** demanding a hearing on the record. Plaintiff once again signed his consent to a "Settlement Conference Order" under duress in order to see his children again.

42.    On July 22, 2019, Mother met with Castro. In Castro's records of his meeting with Mother July 22, 2019, he noted that he was referred by Attorney Keefe, not that he had been appointed by Schroeder as a court psychologist. Castro noted that "*Judge temporarily took away dad's parental rights,*" and "*Mom reported that dad is a big 'conspiracy theory' guy and that the Russians are spying on him.*" On August 14, 2019, Plaintiff met with Castro, who refused to discuss the treatment of the children. Plaintiff paid Castro $185.00 by credit card for the 45-minute session. Castro did not provide an invoice detailing the visit and the payment received at the time of this visit.

43.    On October 31, 2019 and December 18, 2019, Plaintiff sent emails to Castro reporting symptoms of distress he had witnessed in his children since the custody schedule was dramatically changed, including symptoms of clinical depression and extreme anxiety. Castro refused to respond to Plaintiff. Further, Castro refused to provide records of the minor children's treatment to Plaintiff despite numerous requests.

44.     On December 4, 2019, Plaintiff met with Dean L. Rosen, PsyD (hereinafter

"Rosen"), for the court-ordered psychological examination. Rosen did not present a contract

which explained the fee structure. Rosen spoke with Plaintiff for two hours on general topics

pertaining to Plaintiff's family history and the ongoing conflict with Mother. Plaintiff briefly

addressed the reasons underlying the protective order on documents in Casenet pursuant to the

Court's Order of December 15, 2016, but otherwise did not address matters of national security

with Rosen. Plaintiff completed a Minnesota Multi-phasic Personality Inventory (MMPI)-2, a

test which Rosen is not licensed to administer or interpret. Plaintiff gave Rosen a personal check

for $900.00 in payment for these services. Rosen did not provide an invoice or receipt for said

services.

45.     On June 16, 2020, *sua sponte,* Schroeder scheduled a trial for August 14, 2020

without notice to Plaintiff.

46.     On or about June 23, 2020, Plaintiff was delivered a copy of a psychological

report from Dr. Rosen which declared Plaintiff to have a serious mental illness. This report was

based not on Rosen's personal evaluation of Plaintiff, but on *ex parte* meetings between Rosen,

Betz, Keefe, attorney for Mother Jayne Glaser, Esq. (hereinafter "Glaser") and Mother, who

jointly contributed their opinions about Plaintiff to the psychological evaluation, which Rosen

repeated as fact without conducting any investigation of his own. These allegations accused

Plaintiff of not feeding his children, of abusing stimulant medications, and of paranoid ideation

due to Plaintiff's professional public writings about the Russian Federation. Plaintiff sent Rosen

numerous suggested corrections to the basic factual errors in the report, such as Plaintiff's

relative level of education and dates when the family relocated. Rosen would not discuss or cure the factual defects in his report to the Court.

47.     On July 27, 2020, Plaintiff, *pro se*, filed a Motion for Continuance. On July 31, 2020, Schroeder scheduled a hearing on Plaintiff's Motion for Continuance for August 3, 2020 at 2:30 p.m. On July 31, 2020 at 1:35 p.m., Betz filed a "Motion to Strike Pleadings and Request for Order of Additional Fees," which sought to stop Plaintiff from being able to file **any** pleadings in his case because Plaintiff did not have the financial resources to pay for Betz's for-profit services. Further, Betz pleaded to the Court to order Plaintiff to pay even more fees for the time Betz spent filing his own Motion to Strike. Betz refused to provide a copy of said Motion to Strike in advance of the hearing, despite multiple requests by Plaintiff, who, being a *pro se* litigant, had no access to Missouri Case Net to review the pleading prior to the hearing. On August 3, 2020 at 1:34pm, Glaser provided a copy of Betz' Motion to Strike to Plaintiff on Betz's behalf. On August 3, 2020 at 2:15 p.m., Plaintiff filed his "Motion in Opposition to Guardian Ad Litem's Motion to Strike Pleadings" and was prepared to make an argument for his Motions before the Court at the noticed hearing. Schroeder, Glaser, Betz, Keefe, and Plaintiff met via Zoom on August 3, 2020 at 2:30 p.m., as scheduled. Yet again, Schroeder refused to call the court to order for a hearing. No verbatim record was made. No evidence was adduced. No witnesses testified. Schroeder refused to rule on Father's Motion for Continuance. Schroeder, *sua sponte*, rescheduled the trial for October 20, 2020 at 10:00 a.m. Betz then asked the Clerk of the Court's office to alter the public record and erase his Motion to Strike from the docket.

48.     On August 4, 2020, employees in the Clerk of the Court's Office made a docket entry falsely recording the August 3, 2020 Zoom call as a "settlement conference." They also made false docket entries in Missouri Case Net indicating that Plaintiff filed "Suggestions in Opposition" and an additional "Motion for Continuance" on August 4, 2020 instead of in a timely fashion prior to the noticed hearing.

49.     On August 4, 2020, Attorney Keefe wrote a "Settlement Conference Order" in the name of Schroeder, falsely characterizing the events of the previous day, and pressured Plaintiff to sign it indicating his consent. Plaintiff refused. Nevertheless, the Clerk of the Court's Office filed this "Settlement Conference Order" as a consent order despite Plaintiff's lack of signature indicating his consent.

50.     On October 8, 2020, Father filed his cross Motion to Modify custody and began taking depositions in advance of trial. In her October 31, 2020 deposition, Mother did not mention Petitioner's religious beliefs, just as her pleadings to the Court also contained no averments that involved religion. Mother only mentioned the Russians as a part of an allegation about the children watching a YouTube video where Russians were drinking vodka; she did not complain that Plaintiff exposed the children to any of his professional work. Rosen, in his November 13, 2020 deposition, admitted under oath that Plaintiff exhibited logical, consistent, and coherent thoughts, and that Plaintiff did not exhibit loose association, circumstantiality, grandiosity, religiosity, push of speech, delusions, hallucinations, or other thought disorder, however that he concluded Plaintiff met the criteria for paranoid personality disorder pursuant to his private discussions with Mother. Rosen also compared Plaintiff's professional writings to the

"QAnon" conspiracy theories based on the personal opinions of Betz, who was monitoring

Plaintiff's public writing on social media.

51.     On October 20, 2020, Schroeder, *sua sponte*, continued the case indefinitely

pursuant to to the Missouri Supreme Court's orders on COVID-19.

52.     On November 20, 2020, Schroeder, through her court email and not by *sua sponte*

motion of the Court in the official record, ordered that the parties appear for trial on November

24, 2020 at 1:30 pm. No pre-trial conference had been held according to Local St. Louis County

Court Rule 68.7. The parties were not given the seven days advance notice required under Local

St. Louis County Court Rule 68.11(3) to submit updated Form 14 disclosures and to update their

proposed parenting plans for consideration by the Court. Schroeder only scheduled four hours for

both cases to be presented. A copy of this email is not present in the certified docket or the

certified legal file. A *sua sponte* Motion was not filed later by Schroeder.

53.     On November 24, 2020 at 1:30 p.m., Schroeder, Betz, Mother, and Plaintiff

appeared via Zoom for the hearing on the merits of both motions. Despite only four days of

notice, Plaintiff appeared before the Court and was ready to submit evidence, to present

witnesses, and to testify. Yet again, Schroeder refused to call the court to order to hold the

scheduled hearing. No evidence was adduced. No witnesses were called. No verbatim transcript

was made. Judge Schroeder threatened Plaintiff over Zoom that if he did not settle, relinquishing

his parenting rights, then she would punish him financially, ordering him to pay all parties' legal

bills, and strip him of his parenting rights all the same. Plaintiff refused to settle and insisted that

the matter proceed to trial. Schroeder subsequently closed the Zoom meeting at approximately

4:00 p.m.

54.    On November 24, 2020 at 4:09 p.m., Betz emailed Schroeder a suggested Final

Order and Judgment, in excess of his jurisdiction as Guardian *ad litem* for the minor children,

which recommended that the case be dismissed "for failure to prosecute" despite Betz knowing

that all parties were present and ready to proceed. Betz's suggestions also included the sentence

"that the Order entered by this Court on July 15, 2019 is a final judgment *pursuant to the*

*preliminary injunction filed on June 12, 2019*" (emphasis Plaintiff's) despite no preliminary

injunction ever having issued from the court. Betz also suggested that Plaintiff be ordered to pay

him an additional $2500.00 without good cause shown; Betz had filed no suggested Parenting

Plan, submitted no exhibits, nor presented invoices in support of his demand for more fees.

Schroeder entered GAL Betz's order word-for-word, including Betz's punctuation errors, at 4:30

p.m.

55.    Mother wrote Plaintiff later on the evening of November 24, 2020 to state that

Betz—despite the case having just been dismissed—remained in contact with her personally and

that Betz, in excess of his jurisdiction as Guardian *ad litem* for the children, instructed Mother to

tell Plaintiff that he was not allowed to see his children over Christmas.

*IV. Cross Motions to Modify - 15SL-DR06612-02*

56.    On or about December 15, 2020, Schroeder retired from the bench.

57.     On December 22, 2020, Plaintiff filed his Motion to Amend/Set-Aside Judgment, or For New Trial. Plaintiff pleaded for his parenting rights to be restored given that no evidentiary hearing had ever been held.

58.     On December 23, 2020, Mother filed her Motion to Set Aside Judgment and For New Trial, in which she averred that both parties had in fact been ready for trial, *contra* Schroeder's Order that claimed the parties failed to prosecute their cases.

59.     On January 1, 2021, Case No. 15SL-DR06612, *Garland v. Garland*, was assigned to the Honorable John R. Lasater (hereinafter "Lasater") in Division 38 of St. Louis County Court.

60.     On February 25, 2021, a hearing was noticed on Plaintiff's Motion to Amend/Set-Aside Judgment and Mother's Motion to Set Aside Judgment and For New Trial. However, the Lasater Court did not call a hearing to order, did not adduce evidence, and did not hear testimony. Nevertheless, Lasater entered an Order and Judgment in which Mother's Motion to Set Aside was granted. Lasater neither granted nor denied Father's Motion, despite it being called up for hearing by both parties. Lasater further ordered that Schroeder's Order of dismissal for failure to prosecute was "vacated & held for naught" but also ordered that "Both parties are to be in the position they were in on November 24, 2020 which was the date set for trial." Despite the cases having been dismissed, the interlocutory orders remained in force, continuing to strip Plaintiff of his parental rights without a single hearing having been held, without a single witness heard, without any evidence adduced, with no record for Lasater to review, and without

creating a record of the proceedings of February 25, 2021 for potential review by any higher court or investigative body.

61.     On March 11, 2021, cause number 15SL-DR06612-02 was set for trial and a hearing was scheduled for June 10, 2021 at 10:00 a.m..

62.     On April 2, 2021, Plaintiff propounded upon Castro a subpoena *duces tecum* to be testify at deposition and to provide treatment records of the minor children, to which Plaintiff already had a right as their legal guardian. Castro refused to obey the subpoena.

63.     On April 23, 2021, Betz filed his Motion to Quash asking the Court to enjoin Plaintiff from receiving his children's medical records and to stop Castro from being allowed to testify at trial despite Castro's appointment by Schroeder as a court psychologist.

64.     On May 10, 2021 Lasater ordered a custodial schedule agreed upon by the parties which would define the calendar for physical custody of the children from the end of school through August 22, 2021.

65.     On June 24 and June 25, 2021, a trial was called and heard. Plaintiff and Mother testified. Rosen testified that Plaintiff had a "paranoid personality structure" as evidenced by the MMPI-2 test Plaintiff took, and based on the report of Mother, Mother's counsel, and Betz. Rosen testified that he believed Plaintiff was paranoid because of his social media posts about the Russian Federation. Rosen admitted under oath that he had no training in the interpretation of MMPI-2 tests. Plaintiff's counselor Camille Bruton-Reinhold, a certified expert in the MMPI-2, testified. Bruton-Reinhold revealed that Rosen had submitted false data to the court, and that Rosen's psychological report did not meet the standards shared by professionals in his field.

Bruton-Reinhold testified that Betz was opposed to Plaintiff's parenting rights because, in part, of Plaintiff's political beliefs. Betz cross-examined Bruton-Reinhold about Plaintiff's religious beliefs as to whether they were sufficiently "traditional." Castro refused to appear in court to testify, despite having observed the children for nearly two years, depriving the Court of information required under *Mo. Rev. Stat.* § 452.375.2(8) to reach a determination of the best interest of said minor children.

66. Lasater did not rule on the case by the time that the mutually-agreed custody schedule expired on August 22, 2021. Mother filed a Petition for Temporary Restraining Order to keep Father's parenting rights restricted in the absence of a ruling from the Court. Glaser then emailed Lasater *ex parte* to discuss Mother's Temporary Restraining Order application. Lasater emailed Plaintiff's attorney Alan DeWoskin, Esq., *ex parte,* and discouraged Plaintiff from attempting to obtain a court-ordered parenting schedule.

67. On December 21, 2021, Lasater issued his Order and Judgment, granting Mother her Motion to Modify. Lasater stated in his Order and Judgment that he considered "the court's file, the record, the testimony, and the evidence" from the June 24 and June 25, 2021 trial. Lasater stated that he relied on the testimony of Rosen with regards to Plaintiff's putative mental illness due to his paranoia about the Russian Federation, as well as the recommendations of Betz, who objected to Plaintiff's political and religious beliefs. Lasater did not reference the Court's previous stipulation to the facts about Plaintiff's profession. The Lasater Court held that Plaintiff was diagnosed with "Compulsivity Personality Disorder," which is a misstatement of the facts because no professional testified to such a diagnosis, and which does not exist in the medical

literature as a mental illness. Lasater granted Mother sole legal custody and established a

physical custody schedule whereby plaintiff receives extremely restricted time with his children,

including no Christmases or Thanksgivings for the remainder of their childhood. Lasater also

ordered fees to be paid to Betz based on secret invoices submitted *ex parte* which neither party is

allowed to examine. The location of said secret invoices from Betz is unknown.

*V. Additional Documents Missing from the Official Record*

68.     On January 18, 2022, Plaintiff filed his Motion to Amend Judgment. On January

28, 2022, Plaintiff filed his Notice of Appeal and immediately proceeded to obtain, as required

by *Mo. Civ R. P.* 81, the complete record, including a trial transcript, the certified docket, and the

certified legal file. Plaintiff paid St. Louis County approximately $400 for a copy of the certified

docket and certified legal file. The certified docket and certified legal file contained no record of

any transcript of testimony, deposition, or exhibit submitted to the Court at the June 24 and June

25, 2021 trial, despite Lasater's Order and Judgment holding that the Court considered all of

these before ruling. Plaintiff contacted the clerk of Division 38, Nicole Hessler, to ask for a

written transcript of the trial and to inquire as to why no exhibits from the trial had been entered

into the certified legal file. Hessler claimed in writing that she had no ability to obtain a

transcript of the trial, and claimed that all attorneys at trial forgot to submit or admit evidence.

Without a complete record of the case, any appeal by Plaintiff would be futile because his

inability to comply with *Mo. R. Civ. P.* 81.12.

69.     Plaintiff moved for a new trial based on the fact that Schroeder, Lasater, and

Gilmer's failure to keep a remotely complete, accurate record of the proceedings would result in

Plaintiff being denied an appeal as guaranteed to him under *Mo. Rev. Stat.* § 512.020. Lasater

denied both of Plaintiff's motions. Plaintiff also filed, *pro se*, a Petition for Writ of Mandamus in

the Missouri Court of Appeals, Eastern District, pleading for that Court to order the Lasater court

to grant a new trial. The Petition was denied.

    *VI. Additional Pertinent Facts*

    70.    On May 21, 2022, the Russian Federation issued diplomatic sanctions against

Plaintiff along with 962 other Americans, a list which includes Director of the Defense

Intelligence Agency Lt. Gen. Scott Berrier, Director of Central Intelligence William Burns,

Attorney General Merrick Garland, Director of Intelligence for the Joint Chiefs of Staff Lt. Gen.

Michael Groen, and the President of the United States, Joseph R. Biden. The reason given by

Russia's Ministry of Foreign Affairs for his inclusion on the list is Plaintiff's activities exposing

Russian espionage operations on U.S. soil.

## LEGAL CLAIMS

### *COUNT I - Deprivation of Due Process of Law in Violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America, cognizable under 42 U.S. Code § 1983 against Anthony Stemmler*

    71.    Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

    72.    Anthony Stemmler, acting under color of law, denied Plaintiff his right to due

process by obstructing an investigation started by two other officers, and obstructing another law

enforcement agency from conducting its investigation. Further, Stemmler abetted Mother's

illegal acts, and provided false, misleading, incomplete, and inaccurate information to Keefe and

Schroeder, which led directly and indirectly to the violation of Plaintiff's Fifth and Fourteenth

Amendment rights to due process, procedural due process, and substantive due process, further

leading to the violation of Plaintiff's right to parent his children under the Fourteenth

Amendment. Stemmler withheld records of the events of June 10 to June 13, 2019 from Plaintiff

and provided false records of those events to Keefe, Glaser, Mother, and the Court, refused to

provide phone and email communications with Plaintiff, and with the York County, Virginia

Sheriff's Department. Further, Stemmler refused to disclose Axon body camera-recorded video

footage in response to Mother's subpoena *duces tecum* which requested, without reservation, all

records connected to Plaintiff and his home address.

73.     As a direct and proximate result of the conduct of Stemmler, Plaintiff has suffered

and continues to suffer injuries and damages, including but not limited to: infringements and

deprivations of his constitutional rights; deprivation of his property; loss of wages, humiliation

and embarrassment; fear and apprehension; post-traumatic stress disorder, depression and

anxiety; loss of enjoyment of life; loss of activities; and consternation.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Eric A. Garland respectfully prays that this Court enter judgment

in his favor, under 42 U.S.C. § 1983 and 1988, against Defendant Anthony Stemmler, in his

individual capacity, and award Plaintiff any and all compensatory damages, attorneys' fees,

expenses, costs, and any other such relief to which he is entitled and that this Court deems just,

appropriate, and consistent with the important purposes of  42 U.S.C. § 1983.

***COUNT II - Deprivation of Due Process of Law in Violation of the Fifth and Fourteenth***
***Amendments of the Constitution of the United States of America,***
***cognizable under 42 U.S. Code § 1985(2) against Mary B. Schroeder,***
***Anthony Stemmler, and David S. Betz***

75.     Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

76.     Defendants Schroeder, Stemmler, and Betz, through their conspiracy to produce

false records and simulate legal process, deterred Plaintiff by way of intimidation and threat from

testifying on his own behalf in a court of law at a noticed hearing on June 14, 2019. The

conspirators used intimidation and threat to coerce Plaintiff's signature onto a fraudulent

Settlement Conference Order in which he gave up his decretal parenting rights without due

process, which directly and indirectly caused Plaintiff to be deprived of his Constitutional rights

under the Fifth and Fourteenth Amendments of the United States Constitution. Further,

defendants seized Plaintiff's property, to wit, $1000 in "Guardian *ad litem* fees" without due

process, in violation of Plaintiff's rights guaranteed under the Fifth Amendment of the United

States Constitution.

77.     Defendant Schroeder and Betz's actions as part of this conspiracy were clearly in

excess of their jurisdiction, involving *ex parte* communications and the coordination of actions

with the other defendants.

78.     As a direct and proximate result of the conduct of Schroeder, Stemmler, and Betz,

Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to:

infringements and deprivations of his constitutional rights; deprivation of his property; loss of

wages, humiliation and embarrassment; fear and apprehension; post-traumatic stress disorder,

depression, and anxiety; loss of enjoyment of life; loss of activities.

79.     The acts of Defendant Schroeder, Stemmler, and Betz were intentional, wanton,

malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff,

thus entitling him to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Eric A. Garland respectfully prays that this Court enter judgment

in his favor, under 42 U.S.C. § 1985(2) and 1988, against Defendants Anthony Stemmler, in his

individual capacity, and award Plaintiff any and all compensatory damages, attorneys' fees,

expenses, costs, and any other such relief to which he is entitled and that this Court deems just,

appropriate, and consistent with the important purposes of 42 U.S.C. § 1985. Further, Plaintiff

prays that this Court order injunctive relief against Defendants Schroeder and Betz, enjoining

them from refusing to hold noticed hearings; from entering inaccurate records of proceedings of

the court; from altering correctly entered records of proceedings of the court; from destroying or

mutilating records of proceedings of the court; from threatening litigants with violence or

confiscation of property to coerce signatures on documents; and from simulating legal process.

***COUNT III - Deprivation of Due Process of Law in Violation of the Fifth and Fourteenth
Amendments of the Constitution of the United States of America, cognizable under
42 U.S. Code § 1985(2) against Mary B Schroeder and David S. Betz***

80.     Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

81.     Defendants Schroeder and Betz, through their conspiracy to produce false records

and simulate legal process, deterred Plaintiff by way of intimidation and threat from testifying on

his own behalf in a court of law at a noticed hearing on November 24, 2020, acting under color of law. Schroeder and Betz attempted to use a threat against Plaintiff, to wit, to confiscate his money without good cause or due process of law, if he did not settle his case instead of proceeding to trial. Defendants conduct directly and indirectly caused Plaintiff to be deprived of his Constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution. Further, defendants seized Plaintiff's property, to wit, $2500.00 in "Guardian *ad litem* fees" without due process, in violation of Plaintiff's rights guaranteed under the Fifth Amendment of the United States Constitution.

82.     Defendant Betz's actions under color of law as part of this conspiracy were clearly in excess of his jurisdiction, as he had been dismissed from the case at the time he took these actions on November 24, 2020.

83.     As a direct and proximate result of the conduct of Schroeder and Betz, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to: infringements and deprivations of his constitutional rights; deprivation of his property; loss of wages, humiliation and embarrassment; fear and apprehension; post-traumatic stress disorder, depression, and anxiety; loss of enjoyment of life; loss of activities.

84.     The acts of Defendants Schroeder and Betz were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff, thus entitling him to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Eric A. Garland respectfully prays that this Court enter judgment

in his favor, under 42 U.S.C. § 1985(2) and 1988, for declaratory relief against Defendant David

S. Betz, in his individual capacity, and award Plaintiff any and all compensatory and punitive

damages, attorneys' fees, expenses, costs, and any other such relief to which he is entitled and

that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C.

§ 1985. Further, Plaintiff prays that this Court order injunctive relief against Defendant

Schroeder, enjoining her from refusing to hold noticed hearings; from entering inaccurate records

of proceedings of the court; from altering correctly entered records of proceedings of the court;

from destroying or mutilating records of proceedings of the court; from threatening litigants with

confiscation of property to coerce signatures on documents; and from simulating legal process.

### COUNT IV - Deprivation of Due Process of Law in Violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America, cognizable under 42 U.S. Code § 1983 against Anthony Castro

85.     Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

86.     Defendant Castro, while acting under color of state law and in concert with

others, accepted his court-ordered appointment as a psychologist to provide medical care for the

children and to provide material facts about the children's well-being for a decision by the Court

on the children's best interest. Castro violated Plaintiff's rights under *Mo. Rev State* § 191.227 by

refusing to provide him with records of his children's care, and by refusing to discuss their care,

if any, during his appointments, in violation of *Mo. Code Regs.* tit. 20 § 2235-5.030(7)(A)(1).

Castro denied Plaintiff due process under the law by refusing to perform his court-ordered duties,

refusing to provide testimony and records in response to a lawful subpoena issued in the case to which he had been appointed by said court of law. Further, Castro created erroneous records, including, but not limited to, records unequivocally and falsely stating that Plaintiff had already lost his parental rights under the law. Castro thus denied Plaintiff due process and equal protection under the law in violation of the Fifth and Fourteenth Amendments of the Constitution.

87.     Defendant Castro's actions withholding medical records about plaintiff's children and refusing to obey a lawful subpoena were clearly in excess of his jurisdiction as a court-appointed psychologist.

88.     As a direct and proximate result of Castro's actions, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to: infringements and deprivations of his constitutional rights and deprivation of his property.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Eric A. Garland respectfully prays that this Court enter judgment in his favor, under 42 U.S.C. § 1983 and 1988, against Defendant Anthony Castro, in his individual capacity, and award Plaintiff any and all compensatory damages, attorneys' fees, expenses, costs, and any other such relief to which he is entitled and that this Court deems just, appropriate, and consistent with the important purposes of  42 U.S.C. § 1983.

*COUNT V - Deprivation of the Right to Freedom of Speech in Violation of the First Amendment and Fourteenth Amendments of the Constitution of the United States of America, cognizable under 42 U.S. Code § 1985(3) against John R. Lasater, Dean L. Rosen, and David S. Betz*

89.     Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

90.     Defendants Lasater, Rosen, and Betz, acting under color of law, conspired to create and use a fraudulent psychological evaluation to label Plaintiff's accurate, prescient, and professional public commentary on national security issues as evidence of mental illness, thus violating Plaintiff's exercise of his right to freedom of speech guaranteed under the First Amendment of the United States Constitution. Rosen practiced outside of the limits of his competence, using tests for which he had no licensure or expertise to interpret, to wit, the MMPI-2. Rosen failed to seek relevant training to provide forensic psychology services to the St. Louis County Court. Rosen failed to explain his professional relationships with Betz and counsel for Mother in the preparation of his psychological evaluation. Rosen failed to employ competent use of assessment techniques, to wit, he employed the MMPI-2 despite having no licensure or training, and did not adequately communicate the results of the test.  Further, Rosen violated Plaintiff's right to possess his own medical records. Moreover, Rosen lacked education, training, and experience in evaluating matters involving national security, and impermissibly used hearsay and *ex parte* statements about Plaintiff's professional activities as the basis of a diagnosis of serious mental illness.

91.     Using Plaintiff's exercise of freedom of speech as a pretext for stripping him of his parental rights is also chilling to his right to raise his children in the manner of his choosing as guaranteed under the Fourteenth Amendment of the U.S. Constitution.

92.     The conspiracy to create and use this fraudulent psychological evaluation was in excess of the jurisdiction of Lasater, Rosen, and Betz.

93.     As a direct and proximate result of the conduct of Lasater, Rosen, and Betz, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to: infringements and deprivations of his constitutional rights; deprivation of his property; loss of wages, humiliation and embarrassment; fear and apprehension; post-traumatic stress disorder, depression, and anxiety; loss of enjoyment of life; and loss of activities.

94.     The acts of Defendants Lasater, Rosen, and Betz were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff, thus entitling him to an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff Eric A. Garland respectfully prays that this Court enter judgment in his favor, under 42 U.S.C. § 1985(3) and 1988, granting him declaratory relief against Defendants Rosen and Betz, in their individual capacities, and award Plaintiff any and all compensatory and punitive damages, attorneys' fees, expenses, costs, and any other such relief to which he is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1985. Further, Plaintiff prays that this Court order injunctive relief against Defendant Lasater and enjoins him from stripping parental rights from citizens on the basis of their exercise of their Constitutionally-protected right to freedom of speech.

*COUNT V - Deprivation of the Right to Freedom of Religion in Violation of the First Amendment and Fourteenth Amendments of the Constitution of the United States of America, cognizable under 42 U.S. Code § 1985(3) against John R. Lasater and David S. Betz*

95.     Plaintiff Eric Garland realleges paragraphs 1 through 70 as if fully set forth herein.

96.     While serving as Guardian *ad litem* for the minor children, Defendant Betz made, under color of law, recommendations that Defendant Lasater strip Plaintiff of his parental rights in part because of Betz's prejudice against Plaintiff's religious beliefs or lack thereof, in violation of Plaintiff's right to freedom of religion guaranteed under the First Amendment of the United States Constitution.

97.     Using Plaintiff's exercise of freedom of religion as a pretext for stripping him of his parental rights is also chilling to his right to raise his children in the manner of his choosing as guaranteed under the Fourteenth Amendment of the U.S. Constitution.

98.     Defendants Betz and Lasater's prejudice against Plaintiff's exercise of freedom of religion as a pretext for stripping him of his parental rights was in excess of their jurisdiction.

99.     As a direct and proximate result of the conduct of Lasater and Betz, Plaintiff has suffered and continues to suffer injuries and damages, including but not limited to: infringements and deprivations of his constitutional rights; deprivation of his property; loss of wages, humiliation and embarrassment; fear and apprehension; post-traumatic stress disorder, depression, and anxiety; loss of enjoyment of life; and loss of activities.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Eric A. Garland respectfully prays that this Court enter judgment

in his favor, under 42 U.S.C. § 1985(3) and 1988, against Defendant David S. Betz, in his

individual capacities, and award him any and all compensatory damages, attorneys' fees,

expenses, costs, and any other such relief to which he is entitled and that this Court deems just,

appropriate, and consistent with the important purposes of 42 U.S.C. § 1985. Further, Plaintiff

prays that this Court order injunctive relief against Defendant Lasater and enjoins him from

stripping parental rights from citizens on the basis of their exercise of their Constitutionally-

protected right to freedom of religion.

## *COUNT VI - Deprivation of Due Process of Law in Violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America, cognizable under 42 U.S. Code § 1983 against Joan Gilmer*

100.    Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

101.    Gilmer systematically failed to maintain and manage a system of court records

permitting litigants their right to have their cases adjudicated on the merits of the facts of their

case, as well as their legal right to have their cases reviewed by a higher court. Gilmer also aided

and abetted multiple conspiracies against Plaintiff's Constitutionally-guaranteed rights by filing

fraudulent documents, allowing parties to alter official records, and failing to keep an accurate

record of proceedings, in violation of Plaintiff's Fifth and Fourteenth Amendment rights to due

process and substantive due process.

102.    As a direct and proximate result of Gilmer's conduct, Plaintiff has suffered and

continues to suffer injuries and damages, including but not limited to: infringements and

deprivations of his Constitutionally-protected rights; deprivation of his property; and loss of

wages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Eric Garland respectfully prays that this Court enter judgment in

his favor under 42 U.S.C. §§ 1983 and 1988, against Defendant Gilmer in her individual capacity

and award him any and all compensatory damages, attorneys' fees, expenses, costs, and any

other such relief to which he is entitled and that this Court deems just, appropriate, and consistent

with the important purposes of 42 U.S.C. § 1983.

Dated January 19, 2023                           Respectfully submitted,

Eric A. Garland
1933 Meadowtree Lane,
Kirkwood, MO 63122
802-999-8118
eric@EricGarland.co
*Pro Se*