UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **ERIC GARLAND** | ) | **Case No.: 4:23-CV-0064** |
| **Plaintiff,** | ) | **COMPLAINT FOR CIVIL RICO** |
| | ) | **18 U.S.C. § 1962(c)   (Racketeering)** |
| | ) | **18 U.S.C. § 1962(d)   (Racketeering Conspiracy)** |
| | ) | **18 U.S.C. §§ 1341, 1349 (Mail Fraud)** |
| | ) | **18 U.S.C. §§ 1343, 1349 (Wire Fraud)** |
| **v.** | ) | **18 U.S.C. § 1028(a)   (Identity Theft)** |
| | ) | **18 U.S.C. § 1951      (Hobbs Act Extortion)** |
| | ) | **18 U.S.C. § 371       (Honest Services Fraud)** |
| | ) | **18 U.S.C. § 371       (Conspiracy)** |
| | ) | **42 U.S.C. § 1983      (Conspiracy Against Rights)** |
| **MARY B. SCHROEDER** | ) | **42 U.S.C. § 1985(2)   (Conspiracy Against Rights)** |
| **JOHN R. LASATER** | ) | **42 U.S.C. § 1985(3)   (Conspiracy Against Rights)** |
| **JOAN M. GILMER** | ) | **42 U.S.C. § 1988      (Conspiracy Against Rights)** |
| **DAVID S. BETZ** | ) | **18 U.S.C. § 666       (Federal Program Bribery)** |
| **ANTHONY J. CASTRO** | ) | **Mo. Rev. Stat. § 575.020** |
| **DEAN L. ROSEN** | ) | **(Concealing an Offense)** |
| **ANTHONY J. STEMMLER** | ) | **Mo. Rev. Stat. § 575.050** |
| **CATHERINE W. KEEFE** | ) | **(False Affidavit)** |
| **JAYNE M. GLASER** | ) | **Mo. Rev. Stat. § 575.060** |
| *aka CASH FOR KIDS LLC* | ) | **(False Declarations)** |
| | ) | **Mo. Rev. Stat. § 575.110** |
| **KATHERINE PUETZ-** | ) | **(Tampering with a Public Record)** |
| **GARLAND,** | ) | **Mo. Rev. Stat. § 575.130** |
| | ) | **(Simulating Legal Process)** |
| **DOES 1-10,** | ) | **Mo. Rev. Stat. § 575.160** |
| **Defendants.** | ) | **(Interference with Legal Process)** |
| | ) | **Mo. Rev. Stat. § 575.260** |
| | ) | **(Tampering with a Judicial Proceeding)** |
| | ) | **Mo. Rev. Stat. § 575.280(2)** |
| | ) | **(Acceding to Corruption)** |
| | ) | **Mo. Rev. Stat. § 483.165** |
| | ) | **(Misfeasance)** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

**NATURE OF ACTION**
I.  Introduction…………………………………………………………………1
II. Overview of the "Cash for Kids LLC" Racketeering Enterprise………………………1

**PARTIES**………………………………………………………………….………3

**NON-PARTY CO-CONSPIRATORS**………………………………………….…..5

**JURISDICTION AND VENUE**………………………………………………….7

**FACTUAL ALLEGATIONS**…………………………………………………...…..7
III. Cash for Kids LLC and Puetz Victimize Plaintiff Under Color of Law in Family Court……..7

IV. Plaintiff Becomes a Public Figure Commenting on National Security……………….…………13

V.  Plaintiff Is Denied Access to the Docket of His Case and Denied Due Process to
    Enforce the Parenting Plan Through Identity Theft and Forgery……………………………15

VI. Cash for Kids LLC Conspires with Puetz to Extort Plaintiff Out of His Decretal Parenting
    Rights Through Threats of Violence Under Color of Law. …………………………………17

VII. Cash for Kids LLC and Puetz Cover Up Their Extortion Scheme Through the Creation of
     Fraudulent Psychological Evidence Under Color of Law…………………………………….

VIII. Cash for Kids LLC and Puetz Conspire to Deny Plaintiff a Trial on the Record to Further
      Cover Up for Their Violent Extortion Scheme………...………………………………….

IX. Then-Presiding Judge Michael Burton Orders Cash for Kids LLC to Attack Litigants Who
    Threaten Their Racketeering Scheme By Seeking Due Process…………………………….

X.  Lasater Finishes the Extortion Scheme Cover-Up Through Destruction of Evidence and
    Further Threats Against Plaintiff's Property…………………………………………………

XII. Repeated Efforts to Cover Up Cash for Kids LLC's Conspiracy Against Rights………….

XIII. Plaintiff's Career in National Security Confirmed by Vladimir Putin Himself…………..

XIV. Cash for Kids LLC Continues to Conspire Against Plaintiff's Civil Rights………………

**LEGAL CLAIMS**………………………………………………………………………..37
COUNT I - Racketeering - 18 U.S.C. 1962(c)

COUNT II - Racketeering Conspiracy - 18 U.S.C. 1962(d)

COUNT III - Conspiracy Against Rights - 42 U.S.C. § 1983

COUNT IV - Conspiracy Against Rights - 42 U.S.C. § 1983

COUNT V - Conspiracy Against Rights - 42 U.S.C. § 1985(2) The Klu Klux Klan Act - False Affidavits - Mo. Rev. Stat. § 575.050

COUNT VI - Hobbs Act Extortion - 18 U.S.C. § 1951

COUNT VII - Identity Theft - 18 U.S.C. § 1028(a) - Tampering with a Public Record - Mo. Rev. Stat. § 575.110 - Interference with Legal Process -  Mo. Rev. Stat. § 575.160

COUNT VIII - Bribery Concerning Programs Receiving Federal Funds - 18 U.S.C. § 666

COUNT IX - Mail Fraud - 18 U.S.C. § 1341 - Wire Fraud - 18 U.S.C. 1343 - Conspiracy to Commit Mail Fraud - 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud - 18 U.S.C. § 1349 - Acceding to Corruption - Mo. Rev. Stat. § 575.280(2)

COUNT X - Conspiracy Against Rights - 42 U.S.C. § 1985(2), The Klu Klux Klan Act - Simulating Legal Process - Mo. Rev. Stat. § 575.130 - False Declarations - Mo. Rev. Stat. § 575.060

COUNT XI - Conspiracy Against Rights - 42 U.S.C. § 1983 - Misfeasance - Mo. Rev. Stat. § 483.165

COUNT XII - Honest Services Fraud - 18 U.S.C. § 371

Plaintiff Eric A. Garland, brings this Complaint against Mary B. Schroeder; John R. Lasater; Joan M. Gilmer; David S. Betz; Anthony J. Castro; Dean L. Rosen; Anthony J. Stemmler; Catherine W. Keefe; Jayne M. Glaser; Katherine Puetz Garland; and Does 1-10; and alleges as follows:

## NATURE OF ACTION

### I. Introduction

1.      Plaintiff Eric A. Garland is an American citizen, a proud father, and a veteran intelligence professional. For personal profit, as well as to punish Plaintiff for his political speech, Defendants maliciously and corruptly subjected Plaintiff and his minor children to years of litigation; denied Plaintiff his Constitutional rights; stole every dollar he had; and psychologically tormented his young children. Plaintiff and his children are restricted from spending continuing, ongoing, and meaningful time together despite no allegation for over a decade that Plaintiff is an unfit parent. The only allegations against Plaintiff in St. Louis County's kangaroo family court involve his professional opinions about national security, his public opposition to organized crime and public corruption in Missouri, and his supposed religious beliefs which are not to the personal tastes of certain state officials. Plaintiff is one of countless victims of a racketeering enterprise being run out of the St. Louis County Family Court. Plaintiff is suing all parties for money damages.

### II. Overview of the "Cash for Kids LLC" Racketeering Conspiracy

2.      Defendants Schroeder, Lasater, Gilmer, Betz, Keefe, Glaser, Rosen, Castro, Stemmler, and McNelley, at all times mentioned herein, were operating and continue to operate a

4

racketeering enterprise out of St. Louis, Missouri which their members call "Cash for Kids LLC." Their conspiracy includes systematic acts taken under color of state law, in violation of Missouri and Federal criminal statutes. The majority of these acts affect interstate commerce. Defendant Betz, together with other co-conspirators of the racketeering enterprise, publicly nicknamed their group "Cash for Kids LLC" to show their affinity for the juvenile court racketeering enterprise run by now-convicted former judges Conahan and Ciavarella in Luzerne County, Pennsylvania. The racketeering enterprise (hereinafter "Cash for Kids LLC") engages in conspiracy against Constitutional rights, bribery, wire fraud, mail fraud, identity theft, and other predicate acts cognizable under 18 U.S.C. §§ 1961-1968. Cash for Kids LLC has group meetings coordinated by Missouri state judges; operates using a complex network of corporate entities and wire transfers of money; pools its financial resources; conspires to invest in assets to be used by the enterprise; transports children across state lines; and plans further crimes against citizens living in Missouri and other states. The Cash for Kids LLC racketeering enterprise uses multiple instrumentalities of interstate commerce for its continuing operation.

3.      Together with Defendant Katherine Puetz Garland, Cash for Kids LLC conspired to violate Plaintiff's First, Fifth, and Fourteenth Amendment rights. These violations of Plaintiff's certain and guaranteed rights under the United States Constitution required the systematic commission of state and Federal crimes. Individual Defendants, acting in their employment by St. Louis County and the Kirkwood Police Department under color of state law, in a conspiracy with other members of their racketeering enterprise, violated Plaintiff's First Amendment rights to freedom of speech and freedom of religion, as well as Plaintiff's Fifth and Fourteenth Amendment right to procedural due process, right to substantive due process, right to

5

equal protection under the law, and right to parent his children in the manner of his choosing. Cash for Kids LLC continues to systematically violate Plaintiff's Constitutional rights in retaliation against Plaintiff, using their corrupt influence over circuit court employees, judges, and law firms.

4.      Cash for Kids LLC's repeated and continuing violation of Plaintiff's rights guaranteed under the United States Constitution is intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent. Defendants continue to cause irreparable harm to Plaintiff's health, emotional well-being, financial well-being, and future career prospects.

**PARTIES**

5.      Plaintiff Eric A. Garland ("Plaintiff") is and was, at all times relevant hereto, a citizen of the United States and resident of Kirkwood, Missouri.

6.      Defendant Mary B. Schroeder ("Schroeder") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as an Associate Circuit Judge in the employment of  St. Louis County. She is a resident of Des Peres, Missouri. At all times mentioned herein, she acted both on her own and in concert with the other defendants, under color of state law. As a party to this action, Schroeder is named in her individual capacity.

7.      Defendant John R. Lasater ("Lasater") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as a Circuit Judge in the employment of  St. Louis County. He is a resident of Kirkwood, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law. As a party to this action, Lasater is named in his individual capacity.

8.      Defendant Joan M. Gilmer ("Gilmer") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as the Clerk of the Court in the employment of St. Louis County. She is a resident of Overland, Missouri. At all times mentioned herein, she acted both on her own and in concert with the other defendants, under color of state law. As a party to this action, Gilmer is named in her individual capacity.

9.      Defendant David S. Betz ("Betz") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as a Guardian *ad litem* in the employment of St. Louis County. He is a resident of Webster Groves, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law. As a party to this action, Betz is named in his individual capacity.

10.     Defendant Dean L. Rosen ("Rosen") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as a court psychologist in the employment of St. Louis County. He is a resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law. As a party to this action, Rosen is named in his individual capacity.

11.     Defendant Anthony J. Castro ("Castro") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as a court psychologist in the employment of St. Louis County. He is a resident of Webster Groves, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law. As a party to this action, Castro is named in his individual capacity.

12.     Defendant Anthony J. Stemmler ("Stemmler") is and/or was, at all times relevant hereto, a citizen of the United States and acting under color of state law as a lawfully empowered

juvenile officer in the employment of the Kirkwood, Missouri Police Department. He is a resident of St. Louis City, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law. As a party to this action, Stemmler is named in his individual capacity.

13.     Defendant Catherine W. Keefe ("Keefe") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, she acted both on his own and in concert with the other defendants, under color of state law.

14.     Defendant Jayne M. Glaser ("Glaser") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, she acted both on his own and in concert with the other defendants, under color of state law.

15.     Defendant Katherine L. Puetz-Garland ("Puetz") is and/or was, at all times relevant hereto, a citizen of the United States and resident of Manchester, Missouri. At all times mentioned herein, she acted both on her own and in concert with the other defendants, under color of state law.

## NON-PARTY CO-CONSPIRATORS

16.     Michael Burton ("Burton") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law.

17.     Alan Freed ("Freed") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law.

18.     Jeffrey P. Medler ("Medler") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law.

19.     Andrew Leonard ("Leonard") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law.

20.     Laura Hawk Stobie ("Stobie") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, she acted both on his own and in concert with the other defendants, under color of state law.

21.     Ralph Orlovick ("Orlovick") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law.

22.     Sarah Pleban ("Pleban") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, she acted both on his own and in concert with the other defendants, under color of state law.

23.     Elaine Pudlowski ("Pudlowski") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, she acted both on his own and in concert with the other defendants, under color of state law.

24.      Amanda Bundren McNelley ("McNelley") is and/or was, at all times relevant hereto, a citizen of the United States and resident of St. Louis County, Missouri. At all times mentioned herein, he acted both on his own and in concert with the other defendants, under color of state law.

## JURISDICTION AND VENUE

25.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under 18 U.S.C. §§ 1961- 68 (Racketeer Influenced and Corrupt Organizations); 18 U.S.C. § 1951 (Hobbs Act Extortion); 18 U.S.C. 1028 (Identity Fraud); 18 U.S.C. § 371 - Honest Service Fraud; 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. 1349 (Conspiracy); 18 U.S.C. § 666 (Federal Program Fraud); and 42 U.S.C. §§ 1983, 1985, 1988 (Conspiracy Against Rights). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). Venue is proper for the claims arising under RICO pursuant to 18 U.S.C. § 1965(a) because Defendants reside, are found, have agents, or transact affairs in St. Louis, Missouri.

## GENERAL ALLEGATIONS

### III. Cash for Kids LLC and Puetz Victimize Plaintiff Under Color of Law in Family Court

26.      Defendants Cash for Kids LLC has been operating a criminal enterprise out of the St. Louis County Circuit Court for at least twenty years. The enterprise is comprised of judges, public sector employees, private law firms, transport companies, attorneys, and psychologists, among others. Countless families have sought equal protection under the law through the Missouri state courts. However, in St. Louis County, once these American citizens are processed

into the domestic relations and juvenile justice sections of the 21st judicial circuit, and while they are at the most vulnerable points in their lives, the Cash for Kids LLC racketeering enterprise commits a variety of misdemeanor and felony crimes against them under color of state law. Citizens become the victims of wire fraud and mail fraud schemes. Citizens' rights to procedural and substantive due process, enshrined by the U.S. Constitution, are systematically violated. False declarations are made under oath by court officers. Public records are altered and destroyed. Property is seized without due process of law. Free speech unfriendly to the racketeering enterprise is punished. Citizens are not free to raise their children in the manner of their choosing. Citizens are subject to unreasonable searches and seizures of body and property, often in complete absence of any jurisdiction. Citizens are deprived of the honest services they are due from public officials. At worst, children are processed into the criminal system without due process of law and put into the care and custody of known abusers.

27.     Cash for Kids LLC began targeting Plaintiff on or about October 2015 when he sought a dissolution of marriage from Defendant Katherine Puetz Garland in the St. Louis County Circuit Court. Since that time, Puetz has paid hundreds of thousands of dollars in bribes to Cash for Kids LLC for their services harassing, psychologically abusing, defaming, and denying to Plaintiff his Constitutional rights. She has also financed the psychological torment of their young children.

28.     Plaintiff married Puetz on April 1, 2006. Defendant Puetz is the daughter of one of Plaintiff's professional colleagues, Lynne Brewer Puetz, then the Deputy West Executive of the National Geospatial-Intelligence Agency. The marriage produced two children, born in 2009 and 2012. At the time Plaintiff filed for dissolution of marriage, the family resided in St. Louis

County, which had jurisdiction at all times herein pursuant to Mo. Rev. Stat. § 452.700 *et seq.*. Plaintiff retained attorneys Richard B. Eisen and Margaret Boudreau of the law firm Growe Eisen. Plaintiff filed his petition for dissolution of marriage, *Garland v. Garland*, case number 15SL-DR06612, on November 20, 2015. Said case was assigned to Defendant Schroeder.

29.     On or about December 15, 2015, Puetz filed a motion for a Guardian *ad litem.* ("GAL") Puetz's motion did not allege any facts about Plaintiff's fitness as a parent. Puetz averred her "belief" that "[Plaintiff's] unwillingness to *agree* not to use alcohol…*may* pose an obstacle to a mutual acceptable resolution of the parenting issues." Puetz did not allege any history of alcohol abuse, nor criminal record of same, nor medical history of same, nor specific dates, nor specific events involving alcohol in any form, nor any past or potential future impact on the children. Plaintiff's attorneys Eisen and Boudreau did not send Plaintiff any such motion. Neither Eisen nor Boudreau filed a reply, nor did they oppose the appointment of a GAL on grounds that were obviously inimical to their client's interest.

30.     On or about December 29, 2015, Plaintiff's attorneys Eisen and Boudreau falsely claimed to Plaintiff that a GAL had been appointed. Eisen and Boudreau refused to answer questions about what a GAL was, why he was supposedly appointed, or the procedural history behind his appointment. As a result of their lack of candor, Plaintiff asked Eisen and Boudreau to withdraw as his counsel. Plaintiff immediately retained Andrew Leonard and Laura Hawk Stobie of the law firm McCarthy, Leonard, Kaemerrer as substitute counsel.

31.     On or about January 7, 2016, without any order appointing him, Medler entered appearance as GAL. No hearing was held on Puetz's motion for a Guardian *ad litem.* No record was made. No evidence was adduced. No testimony was heard. Schroeder never issued an order

that Jeffrey P. Medler (hereinafter "Medler") act as GAL for the minor children. Medler never invoiced either party through the court. Despite the lack of invoice, Puetz paid Medler approximately $8000.00 through private transactions outside of Plaintiff's household accounts, which were still joint property during that phase of the litigation.

32.     Any attorney serving a court as a GAL must perform their duties pursuant to the Missouri Supreme Court's Guidelines With Comments for Guardian Ad Litem in Juvenile or Family Court Division Matters. These guidelines mandate that the GAL conduct their own research, maintain impartiality, not defer to any other parties, obtain relevant records, and maintain a relationship with the minor children involved in the case.

33.     On or about January 11, 2016, Plaintiff met with Medler without an attorney present at his offices in Clayton. Medler had not met the minor children. Medler had conducted no research. Medler was hostile and verbally abusive. Medler repeated accusations reportedly from Alan Freed, the then-attorney for Puetz. Medler verbally accused Plaintiff of never having had a job, alcohol use disorder, psychiatric illness, drug abuse, and parental neglect. Medler told Plaintiff that it was Plaintiff's job to disprove said allegations, and that he planned to restrict Plaintiff to the minimum custodial time with his children if Plaintiff did not sufficiently disprove all of the GAL's off-the-record accusations.

34.     On or about February 9, 2016, to dispel the meritless allegations of alcohol use disorder, Plaintiff consented to submit to four-times-daily breathalyzer tests under the supposed observation of Ralph Orlovick, purportedly an "addiction counselor" who maintained his private office next to the courthouse in Clayton, Missouri. Plaintiff obtained from Orlovick a "Soberlink" breathalyzer device, which collected chemical breath samples, facial recognition,

and GPS locations of Plaintiff at 9am, 1pm, 6pm, and 9pm daily. Plaintiff completed all 360 tests between February 9 and May 9, 2016 with 360 negative results, no false positives, and no missed tests.

35.    At no time did Schroeder, Medler, Leonard, Stobie, or Orlovick inform Plaintiff that: Soberlink was owned by GEO Group Inc, a privately-held corporation that manages prison facilities in South Africa, ICE detention centers allegedly engaged in slave labor, and youth detention centers under investigation for operating private facilities accused of systematic child rape and torture; that the normal use of Soberlink was as an adjunct to therapy and addiction counseling; that standard use of Soberlink was 7 days for most patients and 30 days for patients with a long history of attempting substance abuse recovery; that standard practice for Soberlink was twice per day; that the use of Soberlink for more than 30 days, or with a negative consequence attached to potential failure, could result in Post-Traumatic Stress Disorder; or that Plaintiff would never receive evidence of his successful completion of this invasive program to discredit any future allegations of substance abuse by Puetz. Further, Plaintiff did not know that Orlovick was not supervised by Schroeder.

36.    After Plaintiff's successful completion of 90 days of Soberlink four times per day with a negative outcome attached to potential failure, Plaintiff was diagnosed with Post-Traumatic Stress Disorder.

37.    In the February 9, 2016 Consent Order signed by Schroeder and Puetz, Schroeder and Puetz agreed that Plaintiff's use of Soberlink might be constrained by upcoming international business travel. To wit, Plaintiff would be giving a lecture about intelligence methodology in Lisbon, Portugal.

14

38.     Despite Puetz and Schroeder's agreement on the record that Plaintiff was an internationally-known intelligence professional, on or about March 21, 2016, Puetz moved that Plaintiff be the subject of a vocational assessment due to his alleged decades-long history of joblessness. A hearing on said motion was scheduled for April 14, 2016. However, no hearing was held, no evidence adduced, no witnesses called. Schroeder, on her own motion, ordered that Plaintiff be subjected to an undefined vocational assessment by an unnamed individual.

39.     On or about April 15, 2016, without any authority to do so, Alan Freed, attorney for Puetz, engaged Sherry Browning to conduct the vocational assessment. Freed did not notice the Court of Browning's engagement. Freed did not notice Browning about the court's recognition of Plaintiff's intelligence career in the legal file of the case. Moreover, Browning was at no time supervised by Schroeder.

40.     On or about April 18, 2016, Plaintiff was asked to fill out a questionnaire for Browning about his favorite classes in high school. Plaintiff was asked to write up his level of education, which included a Masters of International Affairs Technology Policy. Plaintiff was asked to detail his employment history, which included his work for the United States Intelligence Community and as an advisor to the Prince of Monaco. On that same day, Puetz met by telephone with Browning. Puetz did not detail to Browning any alleged mental illness or history of substance abuse, but cited an alleged weakness in the area of small business accounting practices with regards to Plaintiff's intelligence consulting. On or about April 21, 2016, Plaintiff met in person with Browning to discuss these matters.

41.     On or about June 6, 2016, Browning produced a report detailing Plaintiff's decades-long career in intelligence, his hard-cover books, his training as a linguist, his second

career as a professional musician, and that he had briefly slowed business while recovering from major surgery and caring for two children under age six. Browning wrote a report which reflected all of these details. Browning's report was never submitted to the court, despite Schroeder's order.

42.     Puetz paid Orlovick and Browning over $10,000 from non-marital household accounts to which Plaintiff had no access or control through Freed and his law firm, Paule Camazine Blumenthal.

43.     On or about July 24, 2016, despite months of allegations of substance abuse, mental illness, and inability to earn a living, and with no evidence in the record of any kind, Plaintiff was deemed a fit parent by Schroeder. With Puetz's consent, Schroeder granted Plaintiff joint legal and joint physical custody. Schroeder ordered a Parenting Plan that split custodial time evenly between both parents.

**IV. Plaintiff Becomes a Global Public Figure Commenting on National Security**

44.     On or about December 11, 2016, Plaintiff took to the Twitter social media platform and wrote a 127-tweet "thread" about how hostile foreign intelligence attacked America's democracy during the 2016 election. The Twitter thread reached millions of people. Within hours of its publication, Plaintiff became aware of credible threats to his minor children and ex-wife.

45.     On or about December 15, 2016,  Puetz signed a consent order by Schroeder sealing the case *Garland v. Garland* due to Plaintiff's status as a public figure. Schroeder and Puetz stipulated to certain facts in support of sealing the case: that [Plaintiff] is a public figure, commenting frequently on matters of public importance, appearing on talk shows and radio

shows; that [Plaintiff had recently gone] viral on the internet over his political commentary on

Russian interference in the election; that as a result of his commentary on the Russian

interference in the election, individuals have made various threatening comments against

[Plaintiff,] [Puetz's] home, etc.; that [Plaintiff] is concerned for his minor children and the

mother of his minor children; and that [Puetz] consents to this Motion to Elevate the Security

Setting on Missouri Case Net.

46.      Between December 2016 and May 2019, hundreds of thousands of accounts

followed Plaintiff on the Twitter social media platform. On an average day during that period of

time, Plaintiff's tweets could, according to Twitter's internal metrics, generate between one and

ten million "impressions" per day.[1] Plaintiff became a globally-recognized figure, drawing media

attention around the world.

47.      Plaintiff used his newly-powerful Twitter account to write for a worldwide

audience about national security. But Plaintiff also used his platform to broadcast stories about

public corruption and malign foreign influence in St. Louis and throughout Missouri, many of

which were unflattering. Between December 2016 and May 2019, Plaintiff wrote publicly about:

the criminal investigations facing then-Missouri Governor Eric Greitens, a known associate of

Rudy Giuliani and Erik Prince; foreign intelligence influence on the events of Ferguson in 2014;

public corruption around Ferguson involving Schroeder's brother Neil Bruntrager; public

corruption around Lasater's mentor Bob McCulloch; Rep. Ann Wagner's vote to shield Donald

Trump's taxes from scrutiny; the corruption of the St. Louis police departments represented by

---

[1] An "impression" on Twitter is the number of times an individual tweet will appear on an individual screen.
Plaintiff reached millions of individuals per month around the world with his tweets.

the law firm founded by Schroeder's father and operated by her family; Senator Blunt's son

being required to register as the agent of foreign regimes; Greitens' number-one donor Michael

Goguen's role at the October 2017 Las Vegas massacre; the complicity of then Attorney General

of Missouri Josh Hawley with the Trump Administration; connections between the Missouri

GOP and insurrectionist Mike Flynn; use of offshore bank accounts by prominent St. Louis

residents; illegal use of surveillance software under color of law by Missouri law enforcement

officers and their Federal prosecution for same; John Ashcroft's work for foreign despots and

organized crime bosses; and, between December 2018 and June 2019, the Federal prosecution of

St. Louis County Executive Steve Stenger, a close associate of Schroeder.

48.     On or about February 3, 2018, unidentified individuals presumed to be in the

employ the Kirkwood Police Department conducted a warrantless search of Plaintiff's home in

Kirkwood. Armed individuals demanded, without probable cause nor a warrant, to search the

bedrooms of Plaintiff's two minor children while they slept in their beds. The presumed officers

did not identify themselves. The presumed officers did not wear Axon body cameras to record

the search. The presumed officers did not wear name tags. The presumed officers did not show

Plaintiff identification. Plaintiff made a Sunshine Law request pursuant to Mo. Rev. Stat. §

610.110 *et seq*. about the search of his home. The Kirkwood Police Department declined to

respond to said request, and later apparently refused to disclose any records of said Sunshine

Law request, even in response to the eventual subpoena from the Schroeder Court in July of

2019.

**V. Plaintiff Is Denied Access to the Docket of His Case and Denied Due Process to Enforce
the Parenting Plan Through Identity Theft and Forgery**

49.     On April 14, 2019, Andrew Leonard and Laura Hawk Stobie withdrew as counsel. Plaintiff then filed his certification in St. Louis County Court to act *pro se* in his case, entitling him to updates on the case, which was sealed by court order. Every entry in the docket, by Supreme Court Rule, was required to be noticed to Plaintiff via U.S. Postal Service.

50.     On April 30, 2019, attorney Catherine W. Keefe entered appearance for Puetz even though there had been no action in the case since July 2016. Plaintiff was not noticed of Keefe's appearance in the case.

51.     On or about May 14, 2019, Plaintiff, acting *pro se*, filed a Verified Motion for Contempt and a Motion to Show Cause for Contempt in the case of *Garland v Garland*. On that day, Plaintiff paid $36.00 to St. Louis County for process to be served on Puetz by the St. Louis County Sheriff's Department. St. Louis County Circuit Court employees told Plaintiff a hearing was scheduled for June 12, 2019. However, process was never served upon Puetz and no hearing was actually scheduled.

52.     On or about May 24, 2019, Judge Margaret Donnelly supposedly signed the Show Cause Order in the stead of Schroeder. No explanation was given for Judge Donnelly's action in the case.

53.     On or about May 30, 2019, Plaintiff was subsequently instructed by employees under the direct supervision of Gilmer to refile a second copy of his Motion for Contempt and Motion to Show Cause for Contempt. Plaintiff did so. However, these were altered by unidentified individuals in the office of the Clerk of the Court who falsely scribbled "AMENDED" to read "AMENDED VERIFIED MOTION FOR CONTEMPT," even though the pleading was not amended and Plaintiff did not write those words. The document was stamped

by Gilmer on May 30, 2019 bearing Plaintiff's signature as if it were the same document he actually submitted.

54.    The docket entry falsely reads "Show Cause Order - AMENDED." A Testimony Motion Hearing on Plaintiff's Motion to Show Cause for Contempt was scheduled for June 24, 2019 at 9:00am.

55.    Process was never served on Puetz. No hearing for Plaintiff's Contempt motion was ever held.

56.    The certified docket has an entry for June 24, 2019 "Hearing Continued/ Rescheduled." No motion for continuance was filed. Schroeder did not move to continue the hearing. The hearing was not rescheduled.

57.    The certified docket has an entry for November 8, 2019, "CASE TAXED."

**VI. Cash for Kids LLC Conspires with Puetz to Extort Plaintiff Out of His Decretal Parenting Rights Through Threats of Violence Under Color of Law**

58.    At all times herein, the states of Missouri and Virginia had both adopted the Uniform Child Custody Jurisdiction and Enforcement Act as laws in their respective states.

59.    On or about June 3, 2019, Puetz expressed in writing her intention to travel with the children during one of Plaintiff's court-ordered custodial periods, without his consent. Further, the unauthorized travel was to occur over Father's Day, a day explicitly reserved for Plaintiff in Schroeder's court-ordered Parenting Plan. What's more, Puetz expressed her intention to cross an international border with the minor children without an affidavit of consent signed by Plaintiff. Puetz's threatened action would have been in violation of 18 U.S.C. § 1204 - International Parental Child Abduction.

20

60.     On or about June 5, 2019, Plaintiff provided a sworn affidavit to the Federal

Bureau of Investigation, attesting to the facts of the situation as a precautionary measure in the

event that Puetz absconded with the children across an international border during his custodial

time without his consent. Further, Plaintiff's sworn affidavit to the FBI outlined the security risks

to Plaintiff and Lynne Puetz, an "informed person"[2] with an ongoing, substantial relationship to

the U.S. Department of Defense.

61.     On or about June 10, 2019, during Plaintiff's court-ordered custodial time, Puetz

abducted both minor children across state lines. During a period of Plaintiff's custody, Puetz kept

the children in the state of Virginia without Plaintiff's consent with no written plan to return.

Puetz later admitted under oath that she and Keefe conspired for Puetz to abduct the children

domestically because her previously threatened actions to take the children to Canada without

consent put her at risk of criminal prosecution.

62.     Plaintiff was thus entitled to a warrant for the return of the minor children

pursuant to Mo. Rev. Stat. §§ 452.885 and 452.870 because Puetz abducted the children across

state lines when they were ordered by a Missouri court to be in Plaintiff's custody.

63.     On or about June 10, 2019 at approximately 3:40 p.m., Plaintiff reported that the

children were not present at the agreed-upon location of custody exchange at the Jewish

Community Center. The St. Louis County Police directed Plaintiff to meet with the an

unidentified officer from the Valley Park, Missouri Police Department. That officer in turn

_____

[2] "Informed person" is the term of art used to designate individuals who have held security clearances, active
or inactive, which have exposed them to the most sensitive secrets of the United States Government.

directed Plaintiff to bring Schroeder's court-ordered Parenting Plan to the Kirkwood Police Department.

64.    Plaintiff proceeded to the Kirkwood Police Department on June 10, 2019 at approximately 5:00 p.m. where he was interviewed for approximately 45 minutes by Officer Steven Schubert. Another officer wearing a tan uniform who went by the name "Sergeant Sanchez" was also present. The officers interviewed Plaintiff wearing Axon body cameras, which they informed Plaintiff were in operation during the interview. After meeting with Plaintiff, Officer Schubert began an investigation and referred the case to Defendant Anthony J. Stemmler (hereinafter "Stemmler,") a juvenile officer employed by the City of Kirkwood. Officer Schubert told Plaintiff to return to the Kirkwood Police Department on June 11, 2019 at 8:30am.

65.    On June 11, 2019 at approximately 7:30am, Plaintiff contacted the York-Poquoson County, Virginia Sheriff's Department. Plaintiff made contact with Sheriff's Deputy James K. Clark, who also began an investigation.

66.    On June 11, 2019 at approximately 8:30am, Plaintiff returned to the Kirkwood Police Department. Officer Stemmler sat down with Plaintiff in a closed conference room. Officer Stemmler did not wear an Axon body camera. In contradiction to the police officers who started the investigation, Officer Stemmler told Plaintiff that there was no case. Officer Stemmler made clear that because there was no case, he would not be doing any investigation. After their encounter that morning, Officer Stemmler refused to communicate with Plaintiff further. Officer Stemmler also refused to work with York County Sheriff's Department on their investigation, despite communications from their deputies and from Plaintiff.

67.     On June 11, 2019 at approximately 2:30 p.m., Plaintiff received a call from Deputy James K. Clark (hereinafter "Deputy Clark") of the York-Poquoson County, Virginia Sheriff's Department. Deputy Clark told Plaintiff that he was continuing the investigation due to Puetz's continued conduct. Deputy Clark stated that only the Kirkwood Police Department could deliver to his Sheriff's Department the court-ordered Parenting Plan which outlined the custody schedule which would serve as corroborating evidence to take further steps.

68.     On June 11, 2019 at 3:50 p.m. Plaintiff wrote Officer Stemmler an email with a digital copy of the court documents requested by Deputy Clark with a request for Officer Stemmler to forward said documents to the York-Poquoson County, Virginia Sheriff's Department. Officer Stemmler did not respond.

69.     On or about June 11, 2019, Puetz, through Keefe and Glaser as counsel, filed a Motion to Modify custody in St. Louis County Court, Cause Number 15SL-DR06612-01. Prior to abducting the children across state lines, Puetz had given Keefe three years of financial statements and completed a Form 14 to calculate child support. Puetz's Motion to Modify was based on allegations of Plaintiff failing to take the children to a sufficient number of tae kwon do classes. Puetz's pleadings were notarized on June 10, 2019 by Kara Skillington of St. Charles County, Missouri, who swore to have witnessed Puetz signing the affidavit in person. However, Puetz was in Virginia on that date.

70.     On June 12, 2019, Plaintiff spoke again with Deputy Clark, who renewed his request for official court documents from the Kirkwood Police Department and requested that Plaintiff make further attempts to obtain them. That same day, Plaintiff wrote both Officer Stemmler and the Mayor of Kirkwood asking them to take the actions requested by the York-

23

Poquoson County, Virginia Sheriff's Department. Plaintiff received no response from either Officer Stemmler nor the Mayor of Kirkwood.

71.    On June 12, 2019, Puetz, through Keefe, filed an Application for Temporary Restraining Order and/or for Preliminary Injunction pursuant Mo. R. Civ. P. § 92.02(b), which provides for emergency, *ex parte* orders of protection pursuant to Mo. Rev. Stat. § 455.050. Despite being 750 miles away, Puetz sought emergency protection from Plaintiff. Puetz also sought emergency protection from any law enforcement officers looking into her case and prayed that the Court enjoin Plaintiff from communicating with any law enforcement agencies. Puetz's Application included details that would only have been known to Plaintiff and officers of the Kirkwood Police Department. This information, however inaccurate, appeared in Puetz's pleadings through Keefe in spite of Stemmler's claim that there was no case, no further investigation, or records about same to disclose. Moreover, Puetz's Application includes details in her sworn averments not disclosed in the documents sent on July 30, 2019 in response to Puetz's subpoena *duces tecum* about these events propounded on the Kirkwood Police Department more than a month after said Application.

72.    Puetz's signature is affixed to her Application, dated June 12, 2019. The documents were notarized on June 12, 2019 by Kara Skillington of St. Charles County, Missouri, who swore to have witnessed Puetz signing the affidavit in person. However, Puetz was in Virginia on that date.

73.    On June 12, 2019, Schroeder scheduled a hearing on Puetz's *ex parte* Temporary Restraining Order for June 14, 2019 at 10:30 a.m. in Division 32 of St. Louis County Court.

74.     Puetz's Application for an order of protection averred that that noticing Plaintiff of the hearing would not be in the best interest of the children. Nevertheless, Puetz caused private process to be served upon Plaintiff with notice of the *ex parte* hearing. On June 13, 2019 at 10:36 a.m., Plaintiff was served by St. Louis Investigations and Process Service with a summons for the June 14, 2019 *ex parte* Temporary Restraining Order hearing, fewer than the twenty-four hours of advance notice required by Missouri state law for such a hearing.

75.     On June 14, 2019 at 10:30 a.m., Plaintiff appeared *pro se* in Division 32 of St. Louis County Circuit Court. Puetz did not appear at the hearing. Schroeder refused to call the court to order. Schroeder refused to convene a hearing. No verbatim record was made. No evidence was adduced. No witnesses were allowed to testify. Plaintiff was alone, without legal counsel, in a locked courtroom with only Schroeder, a bailiff, and Puetz's counsel, Catherine W. Keefe, Esq.. Keefe prepared court orders which forbade Plaintiff from seeing or contacting his children for 42 days and which appointed David S. Betz, Esq. (hereinafter "Betz") as Guardian *ad litem* and which ordered Plaintiff to pay Betz $1000.00. Plaintiff was threatened by Schroeder and Keefe to falsely indicate his consent to give up his parental rights as a party to Puetz's Motion to Modify litigation. Schroeder threatened to immediately jail Plaintiff for an unspecified crime if he refused to sign the orders prepared by Keefe. Plaintiff signed the documents out of fear of immediate loss of his liberty for an indefinite period of time, and out of fear of the lethal violence he might experience in St. Louis County's notorious jail, where in that same year five detainees died under suspicious circumstances which have resulted in multiple civil rights

25

lawsuits.[3] But for the immediate threat to his physical safety, Plaintiff would have refused to give up his parental rights without due process.

76.     Judge Schroeder, Keefe, and Betz falsely captioned these orders as "Settlement Conference Orders" despite no settlement conference having been possible according to St. Louis County Local Court Rule 68.6, which governs status conferences. To wit, a settlement conference was never scheduled, no issues were discussed prior to a conference, documents were not exchanged nor was there a stipulation as to their authenticity, and Puetz was not present for a first conference. Several of these actions are, according to Local Court Rules, to be taken seven days prior to a status conference; Puetz had only filed her Motion two days before. Nevertheless, Schroeder, Keefe, and Betz affixed their signatures and swore that the coercion of Plaintiff's signature was a "Settlement Conference," Gilmer subsequently recorded the event as a "Settlement Conference," and recorded the orders as "Settlement Conference Orders."

77.     Plaintiff paid Betz $1000.00 via credit card on June 14, 2019 pursuant to Betz's electronic requests for funds via email.

78.     On July 3, 2019 at approximately 1:00 p.m., Plaintiff met with Betz in his Webster Groves law offices without an attorney present. Betz interrogated Plaintiff about Plaintiff's access to classified intelligence from the United States Government. Betz inquired as to Plaintiff's knowledge of the current counterintelligence posture of the United States Intelligence Community with regards to Russian espionage operations. Betz inquired as to the nature of Plaintiff's activities on behalf of the United States Government. Betz also interrogated Plaintiff

---

[3] See *Malcich v. St. Louis Cnty.,* 4:20-cv-01030-AGF (E.D. Mo. June 15, 2022) and many similar deaths in the St. Louis County Jail. These cases are frequently settled and the deaths unexplained.

about his Sunshine Law request of documents from the Kirkwood Police Department about the
warrantless search of Plaintiff's home on February 3, 2018 despite that event never having been
mentioned in any pleadings of the child custody case before the court. Betz asked minimal
questions about the well-being of the minor children as per the jurisdiction of his appointment by
the court. Following this interrogation, Betz did not request medical records of the children; did
not request medical records of Puetz; did not request medical records of Plaintiff; did not request
school records of the children; and did not request additional information from Plaintiff.

79.     On July 15, 2019, attorneys for the parties and the Guardian *ad litem* met *in
camera* in Division 32. Without calling the court to order, Schroeder ordered a drastically
reduced custodial schedule for Plaintiff. Schroeder appointed Castro as the court's psychologist
for the children. Without good cause shown, Schroeder, while in chambers and off the record,
ordered that Plaintiff receive a psychological evaluation. Schroeder ordered that Betz have the
power to change any part of the temporary custody order at any time, impermissibly delegating
her judicial powers. Plaintiff, who had already not been allowed contact with his children for 42
days, was told he would not be allowed to see them again until he signed these orders **without**
demanding a hearing on the record. Plaintiff once again signed his consent to a "Settlement
Conference Order" under duress in order to see his children again.

**VII. Cash for Kids LLC and Puetz Cover Up Their Extortion Scheme Through the
Creation of Fraudulent Psychological Evidence Under Color of Law**

80.     On July 22, 2019, Puetz met with Castro. In Castro's records of his meeting with
Puetz July 22, 2019, he noted that he was referred by Attorney Keefe, not that he had been
appointed by Schroeder as a court psychologist. Castro noted that "*Judge temporarily took away*

27

*dad's parental rights*," and "*Mom reported that dad is a big 'conspiracy theory' guy and that the Russians are spying on him*." On August 14, 2019, Plaintiff met with Castro, who refused to discuss the treatment of the children. Plaintiff paid Castro $185.00 by credit card for the 45-minute session. Castro did not provide an invoice detailing the visit and the payment received at the time of this visit.

81.     On October 31, 2019 and December 18, 2019, Plaintiff sent emails to Castro reporting symptoms of distress he had witnessed in his children since the custody schedule was dramatically changed, including symptoms of clinical depression and extreme anxiety. Castro refused to respond to Plaintiff. Further, Castro refused to provide records of the minor children's treatment to Plaintiff despite numerous requests.

82.     On December 4, 2019, Plaintiff met with Dean L. Rosen (hereinafter "Rosen"), for the court-ordered psychological examination. Rosen did not present a contract which explained the fee structure. Rosen spoke with Plaintiff for two hours on general topics pertaining to Plaintiff's family history and the ongoing conflict with Puetz. Plaintiff briefly addressed the reasons underlying the protective order on documents in Missouri Case Net pursuant to the Court's Order of December 15, 2016, but otherwise did not address matters of national security with Rosen. Plaintiff completed a Minnesota Multi-phasic Personality Inventory (MMPI)-2, a test which Rosen is not licensed to administer or interpret. Plaintiff gave Rosen a personal check for $900.00 in payment for these services. Rosen did not provide an invoice or receipt for said services.

83.     On June 16, 2020, *sua sponte,* Schroeder scheduled a trial for August 14, 2020 without notice to Plaintiff.

84.     On or about June 23, 2020, Plaintiff was delivered a copy of a psychological report from Rosen which declared Plaintiff to have a serious mental illness. This report was based not on Rosen's personal evaluation of Plaintiff, but on *ex parte* meetings between Rosen, Betz, Keefe, attorney for Puetz Jayne Glaser, Esq. (hereinafter "Glaser") and Puetz, who jointly contributed their opinions about Plaintiff to the psychological evaluation, which Rosen repeated as fact without conducting any investigation of his own. These allegations accused Plaintiff of not feeding his children, of abusing stimulant medications, and of paranoid ideation due to Plaintiff's professional public writings about counterintelligence. Further, in his draft report, Rosen described the rape of a minor child by a high school teacher as a consensual relationship. Plaintiff sent Rosen numerous suggested corrections to the basic factual errors in the report, such as Plaintiff's relative level of education and dates when the family relocated. Rosen would not discuss or cure the factual defects in his report to the Court.

## VII. Cash for Kids LLC and Puetz Conspire to Deny Plaintiff a Trial on the Record to Further Cover Up for Their Violent Extortion Scheme

85.     On July 27, 2020, Plaintiff, *pro se*, filed a Motion for Continuance. On July 31, 2020, Judge Schroeder scheduled a hearing on Plaintiff's Motion for Continuance for August 3, 2020 at 2:30 p.m. On July 31, 2020 at 1:35 p.m., Betz filed a "Motion to Strike Pleadings and Request for Order of Additional Fees," which sought to stop Plaintiff from being able to file **any** pleadings in his case because Plaintiff did not have the financial resources to pay for Betz's for-profit services. Further, Betz pleaded to the Court to order Plaintiff to pay even more fees for the time Betz spent filing his own Motion to Strike. Betz refused to provide a copy of said Motion to Strike in advance of the hearing, despite multiple requests by Plaintiff, who, being a *pro se*

litigant, had no access to Missouri Case Net to review the pleading prior to the hearing. On August 3, 2020 at 1:34pm, Glaser provided a copy of Betz' Motion to Strike to Plaintiff on Betz's behalf. On August 3, 2020 at 2:15 p.m., Plaintiff filed his "Motion in Opposition to Guardian Ad Litem's Motion to Strike Pleadings" and was prepared to make an argument for his Motions before the Court at the noticed hearing. Schroeder, Glaser, Betz, Keefe, and Plaintiff met via Zoom on August 3, 2020 at 2:30 p.m., as scheduled. Yet again, Schroeder refused to call the court to order for a hearing. No verbatim record was made. No evidence was adduced. No witnesses testified. Schroeder refused to rule on Father's Motion for Continuance. Judge Schroeder, *sua sponte*, rescheduled the trial for October 20, 2020 at 10:00 a.m. Betz then asked the Clerk of the Court's office to alter the public record and erase his Motion to Strike from the docket.

86.     On August 4, 2020, unidentified employees in the Clerk of the Court's Office made a docket entry falsely recording the August 3, 2020 Zoom call as a "settlement conference." They also made false docket entries in Missouri Case Net indicating that Plaintiff filed "Suggestions in Opposition" on August 4, 2020 instead of a timely opposition on August 3, 2020 to Betz's Motion to Strike which had been removed from the legal file.

87.     On August 4, 2020, Attorney Keefe wrote a "Settlement Conference Order" in the name of Schroeder, falsely characterizing the events of the previous day, and pressured Plaintiff to sign it indicating his consent. Plaintiff refused. Nevertheless, the Clerk of the Court's Office filed this "Settlement Conference Order" as a consent order despite Plaintiff's lack of signature indicating his consent.

30

88.    On October 8, 2020, Father filed his cross Motion to Modify custody and began taking depositions in advance of trial. In her October 31, 2020 deposition, Puetz did not mention Petitioner's religious beliefs, just as her pleadings to the Court also contained no averments that involved religion. Puetz only mentioned the Russians as a part of an allegation about the children watching a YouTube video where Russians were drinking vodka; she did not complain that Plaintiff exposed the children to any of his professional work. Rosen, in his November 13, 2020 deposition, admitted under oath that Plaintiff exhibited logical, consistent, and coherent thoughts, and that Plaintiff did not exhibit loose association, circumstantiality, grandiosity, religiosity, push of speech, delusions, hallucinations, or other thought disorder. Nevertheless, Rosen concluded Plaintiff met the criteria for paranoid personality disorder pursuant to his private discussions with Puetz. Rosen also compared Plaintiff's professional writings to the conspiracy theories of "QAnon" based on the personal opinions of Betz, who was monitoring Plaintiff's public writing on social media.

89.    On October 20, 2020, Schroeder, *sua sponte*, continued the case indefinitely pursuant to to the Missouri Supreme Court's orders on COVID-19.

90.    On November 20, 2020, Schroeder, through her court email and not by *sua sponte* motion of the Court in the official record, ordered that the parties appear for trial on November 24, 2020 at 1:30 pm. No pre-trial conference had been held according to Local St. Louis County Court Rule 68.7. The parties were not given the seven days advance notice required under Local St. Louis County Court Rule 68.11(3) to submit updated Form 14 disclosures and to update their proposed parenting plans for consideration by the Court. Schroeder only scheduled four hours for

both cases to be presented. A copy of this email is not present in the certified docket or the certified legal file. A *sua sponte* Motion was not filed later by Schroeder.

91.     On November 24, 2020 at 1:30 p.m., Schroeder, Betz, Puetz, Glaser, and Plaintiff appeared in Division 32 of St. Louis County Circuit Court via Cisco WebEx video conference for the hearing on the merits of both motions. Despite only four days of notice, Plaintiff appeared before the Court and was ready to submit evidence, to present witnesses, and to testify. Plaintiff and Puetz exchanged exhibits in advance of the trial. Neither Betz, Rosen, nor Castro submitted reports in advance of the trial. At the appointed hour, once again, Judge Schroeder refused to call the court to order to hold the scheduled hearing. No evidence was adduced. No witnesses were called. No verbatim transcript was made. Judge Schroeder threatened Plaintiff that if he did not settle, relinquishing his parenting rights permanently without a hearing, then she would punish him financially, ordering him to pay all parties' legal bills, and strip him of his parenting rights all the same. Plaintiff refused to settle and insisted that the matter proceed to trial. Schroeder subsequently closed the video conference at approximately 4:00 p.m.

92.     On November 24, 2020 at 4:09 p.m., Betz emailed Schroeder a suggested Final Order and Judgment which recommended that the case be dismissed "for failure to prosecute" despite Betz knowing that all parties were present and ready to proceed. Betz's suggestions also included the sentence "that the Order entered by this Court on July 15, 2019 is a final judgment *pursuant to the preliminary injunction filed on June 12, 2019*" (emphasis Plaintiff's) despite no preliminary injunction ever having issued from the court. Betz also suggested that Plaintiff be ordered to pay him an additional $2500.00 without good cause shown; Betz had filed no suggested Parenting Plan, submitted no exhibits, nor presented invoices in support of his demand

32

for more fees. Schroeder and Gilmer entered Betz's order word-for-word, including Betz's punctuation errors, at 4:30 p.m.

93.     Puetz wrote Plaintiff later on the evening of November 24, 2020 to state that Betz—despite the case having just been dismissed—remained in contact with her personally and that Betz instructed Puetz to tell Plaintiff that he was not allowed to see his children over Christmas.

## IX. Then-Presiding Judge Michael Burton Orders Cash for Kids LLC to Attack Litigants Who Threaten Their Racketeering Scheme By Seeking Due Process

94.     On or about September 10, 2020, Evita Tolu filed suit against psychologists James Reid and Jennifer Van Luven, and Elaine Pudlowski, Esq., a GAL. The case was styled *Tolu v. Reid* and was assigned to the Hon. Stanley Wallach in St. Louis County Circuit Court.

95.     On or about January 24, 2021, Michael Burton, then-Presiding Judge of the St. Louis County Court sent an email to attorney Sarah Pleban, a prominent GAL. Burton asked Pleban to assemble the members of their racketeering enterprise to discuss how to attack Evita Tolu and defend their criminal activities. Exhibit A. Burton described any attempt to benefit from due process of law to be illegitimate and hostile if it threatened Cash for Kids LLC.

96.     On or about January 26, 2021, Pleban convened a Zoom conference call. Betz, Stobie, and Maia Brodie, an attorney for Puetz, attended the call. On the Zoom conference, the various participants discussed how to conceal their collective finances by using attorney Greg Brough's IOLTA account as a slush fund under a fake cause of action to pay "cyber researchers" to investigate the computers of journalists writing about their criminal activities. On said Zoom conference, Betz laughed about calling their enterprise Cash for Kids LLC and joked about people assuming that Elaine Pudlowski might be running a Ponzi scheme. Exhibit B.

**X. Lasater Finishes the Extortion Scheme Cover-Up Through Destruction of Evidence and Further Threats Against Plaintiff's Property**

97.     On or about December 15, 2020, Judge Schroeder retired from the bench.

98.     On or about December 22, 2020, Plaintiff filed his Motion to Amend/Set-Aside Judgment, or For New Trial. Plaintiff pleaded for his parenting rights to be restored because there had never been a finding that there was a substantial, ongoing change in circumstances that would justify a modification to the Parenting Plan.

99.     On or about December 23, 2020, Puetz filed her Motion to Set Aside Judgment and For New Trial, in which she averred that both parties had in fact been ready for trial, *contra* Schroeder's Order that claimed the parties failed to prosecute their cases.

100.     On or about January 1, 2021, Case No. 15SL-DR06612-01, *Garland v. Garland*, was assigned to Lasater in Division 38 of St. Louis County Court. The case was assigned a new cause number, 15SL-DR06612-02.

101.     On February 25, 2021, a hearing was noticed on Plaintiff's Motion to Amend/Set-Aside Judgment and Puetz's Motion to Set Aside Judgment and For New Trial. However, Lasater did not call a hearing to order, did not adduce evidence, and did not hear testimony. Nevertheless, Lasater entered an Order and Judgment in which Puetz's Motion to Set Aside was granted. Lasater neither granted nor denied Father's Motion, despite it being called up for hearing by both parties. Lasater further ordered that Schroeder's Order of dismissal for failure to prosecute was "vacated & held for naught" but also ordered that "Both parties are to be in the position they were in on November 24, 2020 which was the date set for trial." Despite the cases having been dismissed, Schroeder's interlocutory orders remained in force, continuing to strip Plaintiff of his

34

parental rights without a single hearing having been held, without a single witness heard, without any evidence adduced, with no record for Lasater to review, and without creating a record of the proceedings of February 25, 2021 for potential review by any higher court or investigative body.

102.    On or about March 11, 2021, cause number 15SL-DR06612-02 was set for trial and a hearing was scheduled for June 10, 2021 at 10:00 a.m..

103.    On or about April 2, 2021, Plaintiff propounded upon Castro, via private process server, a subpoena *duces tecum* to testify at deposition and to provide treatment records of the minor children, to which Plaintiff already had a legal right as their parent. Castro did not obey the subpoena, despite his appointment to serve the court as a quasi-judicial arm.

104.    On or about April 23, 2021, Betz filed his Motion to Quash asking the Court to enjoin Plaintiff from receiving his children's medical records and to stop Castro from being allowed to testify at trial despite Castro's appointment by Schroeder as a court psychologist.

105.    On or about May 10, 2021, Lasater ordered a custodial schedule agreed upon by the parties which would define the calendar for physical custody of the children from the end of school through August 22, 2021.

106.    On or about June 24 and June 25, 2021, a trial was called and heard. Plaintiff and Puetz testified. Rosen appeared as Puetz's witness, not in his capacity as a quasi-judicial arm of the court. Rosen testified that Plaintiff had a "paranoid personality structure" as evidenced by the MMPI-2 test Plaintiff took, and based on the report of Puetz, Puetz's counsel, and Betz. Rosen testified that he believed Plaintiff was paranoid because of his social media posts about the Russian Federation. Rosen admitted under oath that he had no training in the interpretation of MMPI-2 tests. Plaintiff's counselor Camille Bruton-Reinhold, a certified expert in the MMPI-2,

testified. Bruton-Reinhold testified that Rosen had submitted false data to the court, and that Rosen's psychological report did not meet the standards shared by professionals in his field. Bruton-Reinhold testified that Betz was opposed to Plaintiff's parenting rights because, in part, of Plaintiff's political beliefs. Betz cross-examined Bruton-Reinhold about Plaintiff's religious beliefs as to whether they were sufficiently traditional. Castro did not appear in court to testify. Betz did not testify, call witnesses, submit evidence, or submit a report on the well-being of the children.

107.    Lasater did not rule on the case by the time that the mutually-agreed-upon custody schedule expired on August 22, 2021. Puetz filed a Petition for Temporary Restraining Order to keep Plaintiff's parenting rights restricted in the absence of a ruling from the court. Glaser then emailed Lasater *ex parte* while the latter was on vacation. Glaser discussed, *ex parte*, Puetz's Temporary Restraining Order application, which prayed for Plaintiff to pay for Puetz's legal fees in the event a hearing would be called on Puetz's application. Lasater then emailed Plaintiff, *ex parte,* and discouraged Plaintiff from attempting to obtain a court-ordered parenting schedule.

108.    On or about December 21, 2021, Lasater issued his Order and Judgment, granting Puetz her Motion to Modify. Lasater held in his Order and Judgment that he considered "the court's file, the record, the testimony, and the evidence" from the June 24 and June 25, 2021 trial. Lasater held that he relied on the testimony of Rosen with regards to Plaintiff's putative mental illness due to his paranoia about the Russian Federation, as well as the recommendations of Betz, who objected to Plaintiff's political and religious beliefs. Lasater did not reference the Court's previous stipulation to the facts about Plaintiff's profession. Lasater held that Plaintiff was diagnosed with "Compulsivity Personality Disorder," which is a misstatement of the facts

because no professional testified to such a diagnosis, and which does not exist in the medical literature as a mental illness. Lasater attributed statements to Plaintiff which Plaintiff did not make. Lasater granted Puetz sole legal custody and established a physical custody schedule whereby Plaintiff receives extremely restricted time with his children, including no Christmases or Thanksgivings for the remainder of their childhood.

109.    Lasater ordered fees to be paid to Betz based on secret invoices submitted *ex parte* which neither party is allowed to examine. The location of said secret invoices from Betz is unknown.

## XII. Repeated Efforts to Cover Up Cash for Kids LLC's Conspiracy Against Rights

110.    On January 18, 2022, Plaintiff filed his Motion to Amend Judgment. On January 28, 2022, Plaintiff filed his Notice of Appeal and immediately proceeded to obtain, as required by Mo. R. Civ P. § 81, the complete record, including a trial transcript, the certified docket, and the certified legal file. Plaintiff paid St. Louis County approximately $400 for a copy of the certified docket and certified legal file. The certified docket and certified legal file contained no record of any transcript of testimony, deposition, or exhibit submitted to the court at the June 24 and June 25, 2021 trial, despite Judge Lasater's Order and Judgment holding that the Court considered all of these before ruling.

111.    Without a complete record of the case, any appeal by Plaintiff would be impossible because he would be categorically obstructed from being able to comply with Mo. R. Civ. P. § 81.12.

112.    Plaintiff contacted the clerk of Division 38, Nicole Hessler, to ask for a written transcript of the trial and to inquire as to why no exhibits from the trial had been entered into the

certified legal file. Hessler claimed in writing that she had no ability to obtain a transcript of the trial, and claimed that all attorneys at trial forgot to submit or admit evidence.

113.    The audio recording of the June 24 and June 25, 2021 trial features Lasater, Betz, Glaser, and Puetz all discussing the evidence submitted and admitted at trial.

114.    Plaintiff moved for a new trial based on the fact that Schroeder, Lasater, and Gilmer's failure to keep a remotely complete, accurate record of the proceedings would result in Plaintiff being denied an appeal as guaranteed to him under Mo. Rev. Stat. § 512.020. Lasater denied both of Plaintiff's motions.

115.    Plaintiff also filed a Petition for Writ of Mandamus in the Missouri Court of Appeals, Eastern District, pleading for that Court to order the Lasater court to grant a new trial. The Petition was denied.

## XIII. Plaintiff's Career in National Security Confirmed by Vladimir Putin Himself

116.    On May 21, 2022, the Russian Federation issued diplomatic sanctions against Plaintiff along with 962 other Americans, a list which includes Director of the Defense Intelligence Agency Lt. Gen. Scott Berrier, Director of Central Intelligence William Burns, Attorney General Merrick Garland, Director of Intelligence for the Joint Chiefs of Staff Lt. Gen. Michael Groen, and the President of the United States, Joseph R. Biden. The reason given by Russia's Ministry of Foreign Affairs for his inclusion on the list is Plaintiff's activities exposing Russian espionage operations on U.S. soil.

## XIV. Cash for Kids LLC Continues to Conspire Against Plaintiff's Civil Rights

117.    The Cash for Kids LLC racketeering enterprise continues to harass Plaintiff and deny him his civil rights in the only state court he can access - St. Louis County Circuit Court.

38

118.   On or about September a, 2020, attorney Jayne Glaser ceased her law partnership with Catherine W. Keefe, who had been named Commissioner of the Juvenile Court. Glaser took over the family law practice at Sandberg, Phoenix, Von Gontard left by Amanda McNelley when McNelley was appointed to become an Associate Circuit Judge by by Governor Mike Parson in 2019.

118.   On or about May 15, 2023, Plaintiff went to St. Louis County Courthouse in Clayton, Missouri to support his friend Staysea Williams during her custody case, which was public and not sealed. McNelley was presiding. At approximately 9:30am, upon seeing Plaintiff, McNelley had bailiff's eject Plaintiff from the courtroom no motion had been made to seal the case. McNelley also ejected State Representative Sarah Unsicker, who had presented her credentials from the Missouri Legislature so that she could observe the Staysea Williams hearing in her capacity as a legislator who sits on the Children & Families Committee.

119.   On or about May 16, 2023, Sarah Pleban, Esq. wrote Rep. Sarah Unsicker an email. Pleban chastised Unsicker for being seen in public in the same room as Plaintiff. Pleban further asserted that Plaintiff was not allowed to observe public trials in the St. Louis County Courthouse because of his filing of a lawsuit on January 19, 2023 in Federal District Court. Pleban implied that Unsicker's association with Plaintiff made her a dirty, dishonest politician.

120.   On or about August 30, 2023, Plaintiff filed a Breach of Contract suit against his landlords in St. Louis County Circuit Court. Upon filing said Breach of Contract lawsuit, Plaintiff also filed an emergency motion to disqualify the judges of the St. Louis County judicial circuit so there would be no impact on the instant case. Employees under Gilmer's direct supervision have kept her apprised of Plaintiff's case in writing and have yet again repeatedly

39

refused to file Plaintiff's pleadings, schedule hearings on Plaintiff's emergency motions, or produce an uncorrupted docket Said employees give out incorrect, deceptive, unwanted, and improper legal advice to Plaintiff, which if he followed it, would prejudice Plaintiff.

121.    Lasater argued to this Court that Plaintiff's lawsuit in Federal District Court interferes with the administration of justice throughout his judicial circuit. Plaintiff has, accordingly, repeatedly moved in state circuit court that Judge Matthew Hearne recuse himself from hearing the Breach of Contract case due to potential conflicts with the instant case. Hearne refuses to rule on the emergency motions. Gilmer refuses to correct the record or schedule a hearing on Plaintiff's emergency motions. Gilmer has allowed, yet again, opposing counsel in Plaintiff's state circuit court case to file their pleadings and schedule their hearings without the obstruction suffered by Plaintiff.

122.    Despite being an American citizen guaranteed certain rights under the U.S. Constitution, Plaintiff has no unobstructed access to Missouri state courts.

## <u>LEGAL CLAIMS</u>

**COUNT I - Racketeering - 18 U.S.C. 1962(c) - against all Defendants**

123.    Plaintiff realleges paragraphs 1 through 122 as if fully set forth herein.

124.    Defendants Schroeder, Lasater, Gilmer, Betz, Castro, Rosen, Stemmler, Keefe, and Glaser, aka Cash for Kids LLC, conducted the affairs of an Association-In-Fact Enterprise which affected interstate commerce through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

125.    Each Defendant has participated in conspiracies to commit numerous RICO predicate acts, including extortion, wire fraud, mail fraud, and bribery.

126.    The Association-In-Fact Enterprise had an ongoing organizational framework for carrying out its objectives. The Enterprise, during the relevant period, conducted public meetings outlining the financial interest of their Enterprise, loyalty to the Enterprise, retribution against citizens who would threaten the financial health of the Enterprise by exercising their Constitutional rights, a plan to accrue assets for communal use by the Enterprise, a scheme to conceal evidence of their activities from Federal authorities, their operation through a variety of corporate entities, and the exploitation of public offices for personal gain.

127.    Although a private citizen, Defendant Puetz conspired with Cash for Kids LLC to commit the predicate RICO crimes as part of their Enterprise.

128.    Plaintiff has been injured in his business and property by Defendants' violation of 18 U.S.C. § 1962(c). Plaintiff has been defrauded of $120,000 in home equity and $50,000 of retirement accounts. Plaintiff has been forced to pay other co-conspirators of Cash for Kids LLC tens of thousands of dollars for their fraudulent legal services. Plaintiff has wasted thousands of hours spent defending rights already guaranteed to him by the U.S. Constitution and by Missouri statute.

129.    Plaintiff has been injured personally by Defendants' violation of 18 U.S.C. § 1962(c) through emotional distress, consternation, major depression, anxiety, loss of wages, loss of enjoyment of life, public humiliation, loss of activities, and post-traumatic stress disorder. Further, Plaintiff has been burdened by a fraudulent medical diagnosis that damages his future career prospects in his chosen profession.

**COUNT II - Racketeering Conspiracy - 18 U.S.C. 1962(d) - against all Defendants**

130.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

131.    Defendants conspired with each other to violate 18 U.S.C. § 1962(c). Defendants knowingly agreed, combined, and conspired to conduct the affairs of the Association-In-Fact Enterprise through individual acts of: extortion, wire fraud, mail fraud, and bribery. Each Defendant agreed that their operation would involve repeated violations of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1951 (Hobbs Act Extortion); and 18 U.S.C. § 666 (Federal Program Bribery).

132.    Defendants Cash for Kids LLC's conspiracy to violate 18 U.S.C. § 1962(c) violated 18 U.S.C. § 1962(d).

133.    Plaintiff has been injured in his business or property by Defendants' violation of 18 U.S.C. 1962(d). Plaintiff has been injured in his business or property by Defendants' violation of 18 U.S.C. 1962(c).

134.    Plaintiff has been injured personally by Defendants' violation of 18 U.S.C. § 1962(d) through emotional distress, consternation, major depression, anxiety, loss of wages, loss of enjoyment of life, public humiliation, loss of activities, and post-traumatic stress disorder. Further, Plaintiff has been burdened by a fraudulent medical diagnosis that damages his future career prospects in his chosen profession.

**COUNT III - Conspiracy Against Rights - 42 U.S.C. § 1983 - against all Defendants**

135.    Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

136.    Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, conspired to deprive Plaintiff of his rights under the

Fourteenth Amendment to the U.S. Constitution to the care, companionship, and control of his children. Further, Defendants conspired to deprive Plaintiff of his rights under the Fourteenth Amendment to the Constitution to raise his children in the manner of his choosing, including the practice a religion in his home as he sees fit, in violation of 42 U.S.C. § 1983.

137.    Plaintiff has been injured personally by Defendants' violation of 42 U.S.C. § 1983 through emotional distress, consternation, major depression, anxiety, loss of wages, loss of enjoyment of life, public humiliation, loss of activities, and post-traumatic stress disorder.

**COUNT IV - Conspiracy Against Rights - 42 U.S.C. § 1983 - against all Defendants**

138.    Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

139.    Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, conspired to deprive Plaintiff of his rights under the First Amendment to the Constitution to freedom of speech, in violation of 42 U.S.C. § 1983.

140.    Plaintiff has been injured personally by Defendants' violation of 42 U.S.C. § 1983 through emotional distress, consternation, major depression, anxiety, loss of wages, loss of enjoyment of life, public humiliation, loss of activities, and post-traumatic stress disorder.

**COUNT V - Conspiracy Against Rights - 42 U.S.C. § 1985(2) The Klu Klux Klan Act - False Affidavits - Mo. Rev. Stat. § 575.050 - against all Defendants**

141.    Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

142.    Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, deterred Plaintiff by way of intimidation and threat from testifying on his own behalf in a court of law at a noticed hearing on June 14, 2019. As such, Defendants conspired to deprive Plaintiff of his rights under the Fifth and Fourteenth

Amendment to the Constitution to procedural due process and substantive due process, in violation of 42 U.S.C. § 1985(2). In furtherance of this scheme, Defendants produced false affidavits in violation of Mo. Rev. Stat. § 575.050.

143.   Plaintiff has been injured personally by Defendants' violation of 42 U.S.C. § 1983 through emotional distress, consternation, major depression, anxiety, loss of wages, loss of enjoyment of life, public humiliation, loss of activities, and post-traumatic stress disorder.

**COUNT VI - Hobbs Act Extortion - 18 U.S.C. § 1951 - against all Defendants**

144.   Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

145.   Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, extorted $1000.00 from Plaintiff on June 14, 2019 through the threat of physical violence.

146.   Defendant Schroeder, a public official, and Defendant Betz, the quasi-judicial arm of a public official, extorted property from Plaintiff through the explicit threat of violence, in violation of 18 U.S.C. § 1951, Hobbs Act Extortion.

146.   As a result of these willful and intentional violations, Plaintiff has suffered damages and, as provided for in 18 U.S.C. § 1951, seeks an award of the greater of the actual damages suffered or the statutory damages; punitive damages; attorneys' fees and other costs of this action; and appropriate equitable relief.

**COUNT VII - Identity Theft - 18 U.S.C. § 1028(a) - Tampering with a Public Record  - Mo. Rev. Stat. § 575.110 - Interference with Legal Process - Mo. Rev. Stat. § 575.160 -- against all Defendants**

147.   Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

148.     Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, engaged in theft of Plaintiff's identity to interfere with legal process and tamper with a public record.

149.     On or about May 30, 2019, in furtherance of Cash for Kids LLC's racketeering enterprise, Defendant Joan Gilmer knowingly possessed an instrument of Plaintiff's personal identification, to wit, his signature, and knowingly and intentionally filed a court pleading with her personal stamp, to wit, a document which was a forgery.

150.     Gilmer's identity theft used an instrumentality of interstate commerce, to wit, a computer system connecting to the Internet to access the Missouri Supreme Court's Case Net database, in violation of 18 U.S.C. § 1028(a).

151.     All Defendants conspired with Gilmer as part of their common scheme to file this forgery in the public record and to interfere with legal process on Defendant Puetz and to tamper with a public record, in violation of Mo. Rev. Stat. §§ 575.110, 575.160

152.     As a result of these willful and intentional violations, Plaintiff has suffered damages and seeks all equitable relief provided under all relevant Federal and state statutes.

**COUNT VIII - Bribery Concerning Programs Receiving Federal Funds - 18 U.S.C. § 666 - against all Defendants**

153.     Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

154.     Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, engaged in bribery concerning programs receiving Federal funds.

155.     The St. Louis County Circuit Court received funding from the United States

Federal Government in excess of $10,000 per annum during the relevant period.

156.     Defendants corruptly sought the influence of state officials through systematic

monetary payments to state officials and those with influence over state officials to derive

valuable rewards in excess of $5000.00 which were not bona fide wages, fees, or other

compensation paid, or expenses paid or reimbursed, in the usual course of business, in violation

of 18 U.S.C. § 666.

157.     As a result of these willful and intentional violations, Plaintiff has suffered

damages and seeks all equitable relief provided under statute.

**COUNT IX - Mail Fraud - 18 U.S.C. § 1341 - Wire Fraud - 18 U.S.C. 1343 - Conspiracy to Commit Mail Fraud - 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud - 18 U.S.C. § 1349 - Acceding to Corruption - Mo. Rev. Stat. § 575.280(2) - against all Defendants**

158.     Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

159.     Defendants, through their common scheme to commit RICO predicate acts

forming a pattern of racketeering activity, engaged in acceding to corruption.

160.     Defendant Puetz paid tens of thousands of dollars to witnesses and potential

witnesses. These payments were not bona fide wages, fees, or other compensation paid, or

expenses paid or reimbursed, in the usual course of business. Payment was made by Puetz to

Defendant Rosen on the understanding that he would and did testify on her behalf despite his

appointment as the quasi-judicial arm of a court. Payment was made to Castro on the

understanding that he would and did disobey a subpoena or other legal process, would and did

absent himself, would and did withhold evidence, information or documents for the corrupt

46

purpose of influencing a judicial proceeding in Puetz's favor, in violation of Mo. Rev. Stat. §575.280(2).

161.     Defendants engaged in a fraudulent scheme to induce Plaintiff to pay Rosen over $1000.00 by bank checks, transactions which affected interstate commerce, in violation of 18 U.S.C. §§ 1341, 1349.

162.     Defendants engaged in a fraudulent scheme to induce Plaintiff to pay Castro over $400.00 by credit card, a transaction which affected interstate commerce, in violation of 18 U.S.C. §§ 1343, 1349

163.     As a result of these willful and intentional violations, Plaintiff has suffered damages and seeks all equitable relief provided under statute.

**COUNT X - Conspiracy Against Rights - 42 U.S.C. § 1985(2), The Klu Klux Klan Act - Simulating Legal Process - Mo. Rev. Stat. § 575.130 - False Declarations - Mo. Rev. Stat. § 575.060 - against all Defendants**

164.     Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

165.     Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, deterred Plaintiff by way of intimidation and threat from testifying on his own behalf in a court of law at a noticed hearing on November 20, 2020. To wit, Defendants Schroeder and Betz threatened plaintiff's property if he intended to testify in a noticed hearing in a court of law. As such, Defendants conspired to deprive Plaintiff of his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution to procedural due process and substantive due process, in violation of 42 U.S.C. § 1985(2).

166.    Defendants never intended to hold a hearing on November 20, 2020 and lured Plaintiff to appear with counsel by simulating legal process, in violation of Mo. Rev. Stat. § 575.130.

167.    Defendants filed a knowingly false declaration that the parties failed to appear for a hearing on November 20, 2020, in violation of Mo. Rev. Stat. § 575.130.

168.    Defendants simulated said legal process and made said knowingly false declaration to conceal their deprivation of Plaintiff's guaranteed Constitutional rights, in violation of Mo. Rev. Stat. § 575.020.

169.    Plaintiff has been injured personally by Defendants' violation of 42 U.S.C. § 1985(2) through emotional distress, consternation, major depression, anxiety, loss of wages, loss of enjoyment of life, public humiliation, loss of activities, and post-traumatic stress disorder.

**COUNT XI - Conspiracy Against Rights - 42 U.S.C. § 1983 - Misfeasance - Mo. Rev. Stat. § 483.165 - against all Defendants**

170.    Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

171.    Defendants, through their common scheme to commit RICO predicate acts forming a pattern of racketeering activity, deterred Plaintiff from his right to access courts of law.

172.    On or about May 15, 2023, Judge Amanda McNelley ejected Plaintiff from a public courtroom to which Plaintiff had the Constitutional right to access a public hearing at the St. Louis County Courthouse in Clayton, Missouri, in violation of 42 U.S.C. § 1983.

173.    Defendant Gilmer has misfiled and and made numerous false entries in the official docket of another court case in the St. Louis County Circuit Court in which Plaintiff is a party, in violation of Mo. Rev. Stat. § 483.165.

174.     As a result of these willful and intentional violations, Plaintiff has suffered

damages and seeks all equitable relief provided under statute.

**COUNT XII - Honest Services Fraud - 18 U.S.C. § 371 - against all Defendants**

175.     Plaintiff realleges paragraphs 1 through 133 as if fully set forth herein.

176.     Defendants, through their common scheme to commit RICO predicate acts

forming a pattern of racketeering activity, conspired to deprive Plaintiff of the honest services of

elected officials and state employees through their fraudulent schemes under color of law.

177.     As a result of these willful and intentional violations, Plaintiff has suffered

damages and seeks all equitable relief provided under statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on all Counts, and seeks

such relief as specified below for all Counts for which such relief is provided by law:

a) Awarding Plaintiff damages in an amount to be determined at trial, including but not

limited to all damages and losses suffered by Plaintiff as a result of Cash for Kids LLC and

Puetz's attack on Plaintiff;

b) Awarding Plaintiff compensatory and treble damages, as available, in an amount to be

proven at trial.

c) Awarding Plaintiff statutory damages, as available;

d) Awarding Plaintiff punitive damages, as available;

e) Issuing a Declaration that: Defendants, according to proof, conspired to and did engage

in a scheme to defraud and defame Plaintiff in retaliation for his Constitutionally-protected

speech and to derive personal financial profit; and that Plaintiff was at no time credibly or honestly accused of being an unfit parent; and that Plaintiff is and has always been a fit parent and patriotic citizen of the United States;

f) Awarding Plaintiff all costs and attorneys' fees to the full extent permitted under applicable law;

g) Awarding Plaintiff pre-judgment and post-judgment interest as permitted by law;

h) Awarding any other relief as the Court may deem just and proper

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated October 9, 2023                                    Respectfully submitted,

\_\_/s/ Eric A. Garland_____

Eric A. Garland
1933 Meadowtree Lane,
Kirkwood, MO 63122
802-999-8118
eric@EricGarland.co
*Pro Se*